[No. 66556-1-I.   Division One.   September 24, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. MARIO HUMPHRIES, *Appellant*.

778

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Ann M. Summers, Deputy,* for respondent.

¶1 LAU, J. — Mario Humphries fired a gun at a police officer. A jury convicted him of second degree assault with a deadly weapon—including a firearm enhancement finding, third degree assault, and first degree unlawful possession of a firearm. He appeals the unlawful firearm possession conviction, arguing that his counsel's tactical stipulation to the serious offense element over his objection violates his federal and state constitutional right to a jury trial and to due process. Because Humphries waived or abandoned his objection when he changed his mind and signed the stipu-

lation after conferring with his counsel and any error is harmless, we affirm the judgment and sentence.[1]

## FACTS

¶2 At trial, witnesses testified to the following: On February 7, 2010, at 1 a.m., Officer David Ellithorpe was driving a marked patrol vehicle at approximately 15 to 20 MPH through the Rainier Valley neighborhood of Seattle. No nearby businesses were open, and Officer Ellithorpe had not seen a pedestrian for approximately 15 to 20 minutes. As he approached South Juneau Street on Rainier Avenue South, he noticed two males emerge from an alley approximately 40 to 50 yards away. He observed one of the men, later identified as Mario Humphries, raise his right arm to shoulder height and point it at him and his patrol vehicle. Officer Ellithorpe heard a gunshot and saw a muzzle flash from the object in the man's hand. Based on his law enforcement experience, he recognized the flash as a muzzle flash of a small caliber weapon.

¶3 Officer Ellithorpe quickly drove his vehicle away from the alley and broadcast over his radio that someone had shot at him. He reported that the shooter was wearing a gray hooded sweatshirt.[2] Officer Ellithorpe turned off his vehicle lights and drove back to the scene to apprehend the shooter.

¶4 Officer Daryl D'Ambrosia was nearby when he heard the radio dispatch indicating Officer Ellithorpe's request for help. He reached the scene of the shooting in less than one minute. When he arrived, he observed two men walking north on Rainier Avenue South between South Juneau

---

[1] Humphries assigns no error, cites no case authority, and presents no argument directly challenging his second degree assault conviction or firearm enhancement finding. *State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995) (appellate court will not consider issues for which no assignment of error is made and no argument or legal citation is presented).

[2] At trial, he described the clothing as a gray hooded jacket.

Street and South Mead Street. Officer D'Ambrosia immediately contacted Officer Ellithorpe, who had by that time returned to the scene.

¶5 Officer Ellithorpe immediately recognized the two men as the individuals who had emerged from the alley. He identified Mario Humphries—who was wearing a blue and gray hooded jacket—as the person who shot at him. Police officers arrested Humphries.[3]

¶6 No weapons or ammunition were found on Humphries or his companion. Officers searched the area but found no weapon. The presence of thick undergrowth hampered the search. Based on the sound of the gunshot and the size of the muzzle flash, Officer Ellithorpe concluded the weapon used was a small caliber handgun.

¶7 The State charged Humphries by amended information with the crimes of assault in the second degree, assault in the third degree (in the alternative), and first degree unlawful possession of a firearm. Humphries' ineligibility to possess a firearm was based on his prior 2005 and 2006 King County juvenile court convictions of first degree robbery, second degree robbery, and attempted second degree robbery. The State further alleged that Humphries was armed with a firearm at the time he committed the assault.

¶8 On the first day of trial testimony, defense counsel told the trial court that the parties had agreed to stipulate to the fact that Humphries had previously been convicted of a "serious offense," which is an element of the crime of first degree unlawful possession of a firearm. Defense counsel explained the tactical reasons for the stipulation to the trial court: "I do not want the jury to hear the fact that [Humphries had] been convicted of a rob in the first degree, a rob in the second degree and attempted robbery in the second degree." Report of Proceedings (RP) (Oct. 12, 2010) at 5. He also explained that he and Humphries discussed

---

[3] Less than two minutes passed between the time of Officer Ellithorpe's initial report of the shooting and the time that Humphries was detained.

the strategy at length, but Humphries disagreed with the strategy. Counsel also explained his belief that a tactical stipulation required no prior consent from Humphries; the court agreed. At the close of the State's case, the court read the stipulation to the jury, which had been signed by both counsel but not signed by Humphries. The stipulation stated:

> The following statement is a stipulation by both parties. A stipulation means that the following facts are not in dispute and should be considered as fact for the purposes of trial.
>
> The parties in the above-referenced case agree that on February 7, 2010, the defendant, Mario Humphries, had previously been convicted of a serious offense.
>
> The parties further agree that on February 7, 2010, the defendant, Mario Humphries, had previously received written notice that he was ineligible to possess a firearm.
>
> The parties further agree that on February 7, 2010, the defendant, Mario Humphries, knew that he could not possess a firearm.

¶9 After closing argument and before deliberations commenced, the court and counsel discussed exhibits to be considered by the jury during their deliberations. At this point, defense counsel told the court that he talked to Humphries and Humphries had changed his mind and agreed to sign the stipulation. Defense counsel requested, and the court agreed, that the stipulation should not be admitted as an exhibit for the jury's consideration during deliberations. Humphries signed the stipulation below his counsel's signature, and it was filed with the court.

¶10 The jury found Humphries guilty of all three counts and the firearm enhancement. The court imposed 106 months of total confinement and vacated the third degree assault conviction. Humphries moved unsuccessfully for a new trial based on juror misconduct[4] and ineffective assistance of counsel. Humphries appeals.

---

[4] Humphries does not challenge the denial of his new trial motion premised on juror misconduct.

## ANALYSIS

¶11 Humphries contends that his "right to a jury trial and to due process was violated where the court permitted a stipulation of guilt to several elements of the VUFA [violation of the Uniform Firearms Act, ch. 9.41 RCW,] count to be read to the jury, knowing that it was affirmatively objected to by Mr. Humphries." Appellant's Br. at 9 (boldface and capitalization omitted). But we decline to address these constitutional claims because the resolution of this case rests on the determination of nonconstitutional questions discussed below. *State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992) ("If it is not necessary to reach a constitutional question, it is well established policy that we should decline to do so."); *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981) (declining to reach alleged constitutional jury unanimity violation because the alleged instructional error was harmless beyond a reasonable doubt; "A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case."). That core question requires us to review whether the trial court commits reversible error when it accepts defense counsel's strategic decision to stipulate to elemental facts over his client's objection. The parties' briefs on this complex, novel question are also inadequate to bear up to such a significant decision.

### Manifest Constitutional Error

¶12 The parties dispute whether RAP 2.5's manifest constitutional error rule applies to this case. Humphries contends in a footnote that his objection sufficiently preserved the constitutional claims and, thus, the rule does not apply. The State argues Humphries' failure to preserve the claims triggers the rule's application here.

¶13 Under RAP 2.5(a)(3), an issue first raised on appeal may be reviewed by an appellate court where it is a

manifest error affecting a constitutional right. The burden is on the defendant to make the required showing. *State v. McDonald,* 138 Wn.2d 680, 691, 981 P.2d 443 (1999). In *State v. Lynn,* 67 Wn. App. 339, 835 P.2d 251 (1992), we concluded the proper approach in analyzing alleged constitutional error raised for the first time on appeal involves four steps:

> First, the reviewing court must make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. Third, if the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then, and only then, the court undertakes a harmless error analysis.
>
> . . . .
>
> . . . However, it is not sufficient when raising a constitutional issue for the first time on appeal to merely identify a constitutional error and then require the State to prove it harmless beyond a reasonable doubt. The appellant must first make a showing how, *in the context of the trial*, the alleged error *actually* "affected" the defendant's rights. Some reasonable showing of a likelihood of *actual prejudice* is what makes a "manifest error affecting a constitutional right".

*Lynn,* 67 Wn. App. at 345-46 (emphasis added) (quoting RAP 2.5(a)(3)).

¶14 We question whether Humphries establishes manifest constitutional error when he makes no showing that the claimed error actually prejudiced his rights in the context of the trial. The record here indicates that Humphries initially objected but later changed his mind with the benefit of all the evidence, closing remarks, and further consultation with counsel.

*Waiver*

¶15 Even if we assume manifest constitutional error here, Humphries waived or abandoned any claimed error. The record shows that Humphries initially disagreed with his counsel's strategic decision to stipulate that he had previously been convicted of a serious offense—an essential element of first degree unlawful possession of a firearm.[5]

¶16 On the first day of testimony, the following exchange occurred:

[DEFENSE]: And the other thing is that the parties are going into — enter into a stipulation under the VUFA. The State has to prove that Mr. Humphries has been convicted of a serious offense.

I do not want the jury to hear the fact that he's been convicted of a rob in the first degree, a rob in the second degree, and attempted robbery in the second degree.

THE COURT: Sure.

[DEFENSE]: I had a long discussion with Mr. Humphries trying to explain the defense strategy, not wanting that to come in.

He unfortunately doesn't see that. However, I don't think I need his consent when it comes to defense strategy for him to be in agreement with me (inaudible) stipulation so —

THE COURT: That's correct. So you are agreeing to the stipulation?

---

[5] The "to convict" instruction provides in part:

"To convict the defendant of the crime of unlawful possession of a firearm in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about (date), the defendant [knowingly owned a firearm] [or] [knowingly had a firearm in [his] [her] possession or control];

"(2) That the defendant had previously been [convicted] [adjudicated guilty as a juvenile] [or] [found not guilty by reason of insanity] of [(name of serious offense)] [a serious offense]; and

"(3) That the [ownership] [or] [possession or control] of the firearm occurred in the State of Washington."

11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 133.02, at 567 (3d ed. 2008) (alterations in original).

[DEFENSE]: Yes, your Honor.

THE COURT: Okay. You let me know when you want me to read this to the jury.

[THE STATE]: Yes.

THE COURT: And I understand then that, counsel, you discussed this with your client. He doesn't wish to sign, but you believe it's the best legal strategy to proceed in this manner?

[DEFENSE]: Right.

THE COURT: Because it would be prejudicial, in your opinion, to have the jury know that he's been convicted of two prior robberies and attempted robbery?

[DEFENSE]: That's correct, your Honor.

THE COURT: That makes complete sense to me.

RP (Oct. 12, 2010) at 6.

¶17 After listening to the evidence and closing remarks but before deliberations began, the record shows Humphries talked to his counsel, changed his mind about his earlier decision to object, and agreed to the stipulation by signing it in open court:

THE COURT: All right. I also wanted to just stay on the record.

I know you had made a correction on the stipulation on the date, and when I had read that, the defendant didn't sign this stipulation either.

And I assume — but I just wanted to make sure for the record it's the same, it was the same situation, [defense counsel], that your client refused to sign.

But you believe it was the best strategy and tactical decision not to tell the jury about his prior robberies and the specifics about his prior convictions and to do a stipulation.

[DEFENSE]: That's correct, your Honor, but, however, in talking to Mr. Humphries, I think he's prepared to sign it now. I think he —

THE COURT: Oh, okay, that would be helpful.

RP (Oct. 14, 2010) at 88-89.

¶18 It is well-settled law that even constitutional rights can be waived. *State v. Bennett*, 42 Wn. App. 125, 128, 708 P.2d 1232 (1985) (quoting *State v. Myers*, 86 Wn.2d 419, 426, 545 P.2d 538 (1976) ("Even constitutional rights can be waived by conduct . . . .")). Waiver of a constitutional right must be voluntary, knowing, and intelligent. *In re Pers. Restraint of James*, 96 Wn.2d 847, 851, 640 P.2d 18 (1982). In *State v. Valladares*, 99 Wn.2d 663, 671-72, 664 P.2d 508 (1983),[6] the defendant moved pretrial to exclude evidence obtained during a warrantless search, but then affirmatively withdrew the motion. The defendant appealed his conviction, assigning error to the trial court's refusal to exclude the evidence. Our Supreme Court declined to review the issue, holding that the constitutional issue had been "waived or abandoned." *Valladares*, 99 Wn.2d at 672; *see also State v. Mierz*, 72 Wn. App. 783, 789, 866 P.2d 65, 875 P.2d 1228 (1994), *aff'd*, 127 Wn.2d 460, 901 P.2d 286 (1995). *Valladares* relied on *Johnson v. United States*, 318 U.S. 189, 63 S. Ct. 549, 87 L. Ed. 704 (1943). There, the Court found constitutional error but held reversal unwarranted because the defendant "affirmatively withdrew a Fifth Amendment objection to a prosecution." *Valladares*, 99 Wn.2d at 672 (quoting *Johnson*, 318 U.S. at 200). Justice Douglas concluded that withdrawal of the objection amounted to an express waiver:

> We can only conclude that petitioner expressly waived any objection to the prosecutor's comment by withdrawing his exception to it and by acquiescing in the treatment of the matter by the court. It is true that we may of our own motion notice errors to which no exception has been taken if they would "seriously affect the fairness, integrity, or public reputa-

---

[6] We are unpersuaded by Humphries' attempt to distinguish *Valladares*. Humphries argues, "In that case, the defendant raised a suppression matter, but then affirmatively withdrew it from trial court consideration, effectively asking the trial court to now not rule." Appellant's Reply Br. at 5. He cites no case that holds that the principle of waiver is limited to issues in which a defendant deliberately avoids litigating an issue during trial as in *Valladares*. As noted below, waiver involves an intentional relinquishment or abandonment of a known right or privilege.

tion of judicial proceedings." But we are not dealing here with inadvertence or oversight. This is a case where silent approval of the course followed by the court is accompanied by an express waiver of a prior objection to the method by which the claim of privilege was treated.

*Johnson*, 318 U.S. at 200 (citations omitted) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936)).

¶19 *"Valladares* and [*State v.*] *Rodriguez*[, 65 Wn. App. 409, 417, 828 P.2d 636 (1992)] reinforce the definition of 'waiver' as 'an intentional relinquishment or abandonment of a known right or privilege.'" *State v. Harris*, 154 Wn. App. 87, 95, 224 P.3d 830 (2010) (internal quotation marks omitted) (quoting *State v. Riley*, 19 Wn. App. 289, 294, 576 P.2d 1311 (1978)).

¶20 Humphries claims in his opening brief that the court's acceptance of the stipulation over objection "was incorrect but may have stemmed from conflict in case law concerning the question whether a full oral colloquy is required before a stipulation." Appellant's Br. at 10 (citation omitted). Humphries mistakenly argues that counsel agreed to stipulate "to most of the elements of the VUFA offense" and "to several elements of prior conviction, notice, and knowledge of firearm ineligibility" and to "forcing the accused to essentially agree that he is guilty as to most of the elements of the offense." Appellant's Br. at 10; Appellant's Reply Br. at 11. The record shows the parties stipulated only to the "serious offense" element and to other facts that do not constitute either statutory elements or implied elements of the crime. The parties stipulated that Humphries "knew that he could not possess a firearm" and "he had previously received written notice that he was ineligible to possess a firearm." *State v. Reed*, 84 Wn. App. 379, 382-85, 928 P.2d 469 (1997) (there is no requirement that the State prove the defendant knew his possession of a firearm was illegal or that he received notice of his ineligibility to possess a firearm). The scienter necessary to be

proved by the State is that the defendant *knowingly possessed* the firearm. *State v. Anderson,* 141 Wn.2d 357, 360-67, 5 P.3d 1247 (2000). Thus, Humphries' above-quoted assertions are incorrect.

¶21 It is true, as noted above, that waiver of a constitutional right must be knowing, voluntary, and intelligent. But Humphries attempts to analogize counsel's decision to stipulate to the decision to plead guilty. Numerous cases undermine this claim in holding that entry of a stipulation to less than all elements of the offense does not require the same level of trial court inquiry that would accompany the entry of a guilty plea. *United States v. Ferreboeuf,* 632 F.2d 832, 836 (9th Cir. 1980) (holding that "no voluntariness inquiry was required in this case before accepting the stipulation"); *Adams v. Peterson,* 968 F.2d 835, 839-43 (9th Cir. 1992) (stipulation was not de facto guilty plea and defendant not entitled to full measure of protection that attends such a plea); *In re Det. of Moore,* 167 Wn.2d 113, 121, 216 P.3d 1015 (2009) (no due process violation where trial court accepted factual stipulation without inquiry into whether defendant understood and knowingly waived his right to contest State's case against him); *State v. Johnson,* 104 Wn.2d 338, 340-43, 705 P.2d 773 (1985) (stipulated facts trial is substantively different than a guilty plea).

¶22 The Washington appellate decision upon which all subsequent cases rely is *State v. Wiley,* 26 Wn. App. 422, 613 P.2d 549 (1980). The issue there was whether a stipulation to facts regarding the alleged crime was tantamount to a guilty plea, thus calling into play the procedural safeguards of CrR 4.2 governing guilty pleas. We held that guilty plea admonitions were unnecessary, reasoning:

> A guilty plea, however, is functionally and qualitatively different from a stipulation. A guilty plea generally waives the right to appeal. A guilty plea has been said to be "itself a conviction; nothing remains but to give judgment and determine punishment."
>
> A stipulation, on the other hand, as was employed in the instant case, is only an admission that if the State's witnesses

were called, they would testify in accordance with the summary presented by the prosecutor. The trial court must make a determination of guilt or innocence. *State v. Gossett*, 120 Ariz. 44, 583 P.2d 1364 (1978). More importantly, a stipulation preserves legal issues for appeal and can operate to keep potentially prejudicial matters from the jury's consideration.

*Wiley*, 26 Wn. App. at 425-26 (citations omitted) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)).

¶23 Here, the stipulation acknowledged that the State's evidence would show that Humphries "had previously been convicted of a serious offense." This form of stipulation preserved Humphries' legal issues for appeal and right to present evidence and cross-examine witnesses, and allowed the jury to still determine Humphries' guilt or innocence while keeping indisputable unfair prejudicial evidence from the jury. *Johnson*, 104 Wn.2d at 342. In short, the stipulation in this case was not equivalent to an admission that Humphries was guilty of first degree unlawful possession of a firearm. We conclude that the stipulation was not the type of stipulation that triggered a level of inquiry associated with a guilty plea.

¶24 In *State v. Woods*, 143 Wn.2d 561, 608-09, 23 P.3d 1046 (2001), the court held that waiving admission of mitigating evidence in a capital case must be knowing, voluntary, and intelligent—but the waiver is presumed to be knowing, voluntary, and intelligent if part of trial strategy. Similar to *Woods*, Humphries' decision to stipulate was undisputedly based on trial strategy. In *Woods*, the defendant claimed that the trial court erred in failing to conduct a colloquy to ensure that his decision to waive his right to present mitigating evidence at the death penalty phase was the product of an intelligent, knowing, and voluntary choice. He argued the trial court's failure to engage in this colloquy entitled him to vacation of his death sentence and the case remanded to the trial court for a new sentencing proceeding. A capital defendant has a statutory and consti-

tutional right to present relevant mitigating evidence for sentencing. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982). "Like other constitutional rights, a defendant may waive the right to present mitigating evidence so long as the waiver is made 'knowingly, voluntarily, and intelligently.' " *Woods*, 143 Wn.2d at 609.

¶25 Observing that a trial court's responsibility to ensure that a defendant's waiver of the right to present mitigating evidence is made knowingly, voluntarily, and intelligently was a question of first impression and never addressed by the United States Supreme Court or the Ninth Circuit Court of Appeals, the court concluded no trial court colloquy was necessary, reasoning:

> [A] trial court need not conduct a "colloquy" to ensure that a capital defendant's decision to waive the right to present mitigating evidence is a voluntary, intelligent, and knowing choice. Rather, like the evaluation of a defendant's waiver of the right to testify on his or her own behalf, "the judge may assume a knowing waiver of the right from the defendant's conduct." *State v. Thomas*, 128 Wn.2d 553, 559, 910 P.2d 475 (1996). In our view, the decision of whether or not to present mitigating evidence, like other decisions that must be made in the course of a trial, is one that is influenced by trial strategy. Thus, the responsibility for informing the defendant of this right and discussing the merits and demerits of the decision resides with defense counsel. Under this standard, it is clear that Woods made a voluntary, intelligent, and knowing choice not to present mitigating evidence.

*Woods*, 143 Wn.2d at 609. We apply the *Woods* presumption here because the record plainly shows counsel's decision to stipulate was tactical and made for the express purpose of preventing the jury from hearing unfair prejudicial evidence—Humphries' prior convictions of first degree robbery, second degree robbery, and attempted second degree robbery. The record indicates that while Humphries initially disagreed with that reasonable strategic decision, he changed his mind after consultation with his counsel and agreed to sign

the stipulation before jury deliberations began. Thus, the trial court was entitled to presume Humphries' waiver was knowing, voluntary, and intelligent.

¶26 As our Supreme Court explained, the requirements for a valid waiver depend on the circumstances of each case, including the nature of the constitutional right at issue and the defendant's conduct, experience, and capabilities. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994); *State v. Cham*, 165 Wn. App. 438, 267 P.3d 528 (2011), *petition for review filed*, No. 86957-0 (Wash. Feb. 2, 2012). Humphries claims that his change of mind and decision to sign the stipulation was the product of earlier misinformation communicated by counsel and the court and suggests coercion occurred.[7] For example, he contends, "The present situation involves counsel forcing [Humphries] to essentially agree that he is guilty as to most of the elements of the offense charged." Appellant's Reply Br. at 11-12. Nothing in this record supports the claims because the decision to change his mind and sign the stipulation before jury deliberations is "one that is influenced by trial strategy." *Woods*, 143 Wn.2d at 609. That strategy and the responsibility for informing Humphries about his rights and discussing the risks and benefits of the decision resided with defense counsel, not the court. The claims about the reasons for his change of mind are speculative and involve matters outside the record—Humphries' communications with counsel—that can be raised only in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

---

[7] We are unpersuaded by Humphries' arguments directed at minimizing the factual and legal significance of Humphries' agreement with the strategic decision. Humphries plainly understood he had the right to disagree and object to his counsel's strategic decision to stipulate because he voiced his objection and refused to sign the stipulation. He similarly understood he had a right to change his mind because he later signed the stipulation, indicating his agreement with counsel's strategic decision.

*Harmless Error*

¶27  Even if the trial court erred in accepting the stipulation over Humphries' initial objection, the error was harmless. "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985); *see also State v. Frost*, 160 Wn.2d 765, 779-82, 161 P.3d 361 (2007) (applying harmless error analysis to due process violation); *Neder v. United States*, 527 U.S. 1, 11-13, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (applying harmless error analysis where trial court erroneously omitted element to an offense in jury instruction and violated jury trial right). "[A]n instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 9. "[T]o determine that a constitutional error is harmless, it must appear beyond a reasonable doubt that the error did not contribute to the ultimate verdict." *State v. Berube*, 150 Wn.2d 498, 505, 79 P.3d 1144 (2003). "Further, if the record supports a finding that the jury verdict would be the same absent the error, harmless error may be found." *Berube*, 150 Wn.2d at 506.

¶28  The record here leaves no doubt that the jury would have reached the same result without the claimed error. Humphries asserted general denial to all the charges. Three experienced police officers testified to the facts summarized above. Humphries did not testify but called a well-known expert to testify about the effect of stress on memory accuracy. Humphries argues that harmless error analysis does not apply but cites to no controlling authority.[8]

---

[8] Humphries argues that harmless error analysis is inapplicable here because "[a]s with an involuntary plea of guilty, no 'harmless error' analysis applies in which the State's proof is judged by the evidence that could have been submitted

¶29 Officers arrested Humphries within two minutes of the shooting near the location where the shooting occurred. Officer D'Ambrosia said Officer Ellithorpe described the two men. Officer D'Ambrosia saw the two men walking together, and Officer Ellithorpe positively identified Humphries and his companion as soon as he drove up as the two men involved in the shooting. Neither officer saw anyone else matching their description. Officer Ellithorpe identified Humphries within minutes of the shooting as the man wearing a gray hooded jacket who fired the gun at him. Although no gun was recovered, Officer Ellithorpe testified based on his training and experience that he saw Humphries' "right hand come up to shoulder height, and then I heard a gunshot." RP (Oct. 13, 2010) at 21. He immediately recognized the sound as a gunshot from a small caliber weapon. Humphries' gray hooded jacket, cap, and sweatshirt were admitted into evidence. A recording of the dispatch call reporting the shooting and other information shared among the officers was also admitted as an exhibit.

¶30 The jury determined beyond a reasonable doubt that Humphries fired a gun at Officer Ellithorpe. Humphries does not appeal the second degree assault with a deadly weapon conviction or the firearm enhancement finding. He does not claim the decision to stipulate to a serious offense constitutes deficient performance. He does not dispute that the State, absent the stipulation, was fully prepared to present evidence of constitutionally valid prior serious offense convictions for first degree robbery, second degree robbery, and attempted second degree robbery. If the court had refused to accept defense counsel's stipulation over Humphries' initial objection, the State would have presented certified court documents showing his prior robbery convictions. We are confident beyond a reasonable doubt that under these circumstances, the jury's verdict would have been the same. Any error here was harmless.

in support of the improperly conceded elements." We disagree premised on the well-settled case authority above. Appellant's Br. at 11-12.

*Ineffective Assistance of Counsel*

¶31 Humphries asserts ineffective assistance of counsel based on trial counsel's failure to request a limiting instruction regarding the "serious offense" stipulation. To prevail on an ineffective assistance claim, Humphries must demonstrate deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient where it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Our scrutiny of defense counsel's performance is highly deferential and employs a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *McFarland*, 127 Wn.2d at 335-36. If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for an ineffective assistance claim. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991); *see also State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) ("[T]he defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004))). In order to establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Failure to make the necessary showing on either prong of the test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697.

¶32 When, as here, counsel requests no limiting instruction regarding evidence of a prior conviction, we presume counsel sought to avoid reemphasizing the damaging evidence. *State v. Dow*, 162 Wn. App. 324, 335-37, 253 P.3d 476 (2011); *see also State v. Yarbrough*, 151 Wn. App. 66, 90-91, 210 P.3d 1029 (2009); *State v. Price*, 126 Wn. App. 617, 649, 109 P.3d 27 (2005); *State v. Barragan*, 102 Wn.

App. 754, 762, 9 P.3d 942 (2000); *State v. Donald*, 68 Wn.
App. 543, 551, 844 P.2d 447 (1993). Because defense coun-
sel's decision not to request a limiting instruction consti-
tutes legitimate trial strategy, Humphries fails to show
deficient performance. We are not persuaded by counsel's
subjective postverdict opinion that his decision not to re-
quest a limiting instruction was deficient performance.
Humphries also points to nothing in the record that indi-
cates the jury used the stipulation for an improper purpose.
Humphries' ineffective assistance claim fails because he
establishes no deficient performance or prejudice. The court
properly exercised its discretion by denying the new trial
motion.

## CONCLUSION

¶33 Because Humphries changed his mind and acqui-
esced to entry of the stipulation before trial ended, he
waived or abandoned any claim that the trial court erred in
allowing the stipulation over his objection. Even assuming
no waiver or abandonment, any claimed error was harm-
less. And because the trial court did not abuse its discretion
by denying the new trial motion, we affirm the judgment
and sentence.

APPELWICK, J., concurs.

¶34 DWYER, J. (dissenting) — As the majority correctly
notes at the outset of its analysis, this case requires "us to
review whether the trial court commits reversible error when
it accepts defense counsel's strategic decision to stipulate to
elemental facts over his client's objection"—an issue charac-
terized by the majority as a significant question of constitu-
tional law. Majority at 785. Despite this promising beginning,
the majority then avoids this "core question" at each subse-
quent stage of its analysis, wrongly relying on a host of
avoidance doctrines along the way. Because the relevant

case law makes clear that a stipulation to elements of a crime is not properly accepted by a trial court over the defendant's personal, voiced objection, the stipulation in this case—proffered to the trial court over defendant Mario Humphries' personal, voiced objection—was improperly accepted. Because I do not agree with the majority that Humphries later waived either his objection or his constitutional rights or that the error was harmless, I respectfully dissent.

## I

¶35 The relevant facts may be succinctly summarized. Mario Humphries was charged with the crimes of assault in the second degree, assault in the third degree (in the alternative), and unlawful possession of a firearm in the first degree based upon an incident in which he fired a gun at a police officer. At trial, defense counsel determined that the defense would stipulate that Humphries had been previously convicted of a serious offense—an element of the crime of unlawful possession of a firearm. Humphries expressly disagreed with the decision to stipulate and initially refused to sign the written document encompassing the stipulation. The trial court—after voicing its agreement with defense counsel that Humphries' consent was unnecessary—accepted the stipulation. The stipulation was then read to the jury. At the end of the case, following the conclusion of closing arguments, Humphries was induced to sign a document purporting to stipulate to the fact of his previous conviction. This document was not introduced into evidence, nor was it presented to the jury during deliberations. The jury convicted Humphries as charged.[9]

## II

¶36 The majority relies upon the doctrine of constitutional avoidance in declining to determine whether a defen-

---

[9] Humphries' conviction of assault in the third degree was later vacated.

dant's constitutional rights are violated by the entry of a stipulation to which the defendant has voiced a personal objection. Indeed, what constitutional rights (if any) the majority believes to be implicated by a stipulation to facts constituting an element of a charged offense remains an open question. However, because an understanding of the particular constitutional rights at issue is essential to any analysis of waiver—the doctrine upon which the majority grounds its decision—I do not agree that this issue may be properly avoided. Accordingly, I begin by discussing and identifying the constitutional rights implicated by the entry of such a stipulation.

¶37 "Once a criminal defendant enters a plea of not guilty, the Fifth and Sixth Amendments to the Constitution entitle that defendant to at least two trial-related rights." *United States v. Ayoub*, 498 F.3d 532, 544 (6th Cir. 2007); *see also United States v. Hardin*, 139 F.3d 813, 815 (11th Cir. 1998). First, "[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 511, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). Second, the "simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged." *Mathews v. United States*, 485 U.S. 58, 64-65, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988); *see also Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (discussing the interrelated "Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict"). Humphries invoked both of these constitutional rights when he pleaded not guilty to the charges against him.

¶38 What, then, is the effect of defense counsel's stipulation to Humphries' prior conviction of a serious offense—an element of the crime with which he was charged? "It is well settled that a defendant, by entering into a stipulation, waives his right to assert the government's

duty to present evidence to the jury on the stipulated element." *United States v. Harrison*, 340 U.S. App. D.C. 198, 204 F.3d 236, 240 (2000); *see also United States v. Meade*, 175 F.3d 215, 223 (1st Cir. 1999); *United States v. Melina*, 101 F.3d 567, 572 (8th Cir. 1996); *United States v. Keck*, 773 F.2d 759, 769-70 (7th Cir. 1985); *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976) (per curiam). As this court has previously explained, where a defendant stipulates in writing to the fact of a previous conviction, the defendant waives "the right to put the State to its burden of proof on [that] element." *State v. Wolf*, 134 Wn. App. 196, 199, 139 P.3d 414 (2006); *see also State v. Stevens*, 137 Wn. App. 460, 466, 153 P.3d 903 (2007). As a result of such a waiver, the government is relieved of its obligation to introduce any evidence on that element—including the stipulation itself. *Wolf*, 134 Wn. App. at 203.[10]

¶39 Indeed, because "the jury need not resolve the existence of an element when the parties have stipulated to the facts which establish that element," a stipulation to such facts also constitutes a waiver of the "right to a jury trial on that element." *United States v. Mason*, 85 F.3d 471, 472 (10th Cir. 1996).[11] Thus, where a defendant stipulates to facts constituting an element of the offense with which he

---

[10] The Fourth Circuit has disagreed that a stipulation relieves the prosecution of its obligation to prove the elements of a crime beyond a reasonable doubt. *United States v. Muse*, 83 F.3d 672, 679-80 (4th Cir. 1996). "Although a fact stipulation may have the effect of providing proof beyond a reasonable doubt of the existence of the facts that make up an element, a conviction is not valid unless a *jury* considers the stipulation and returns a guilty verdict based on its finding that the government proved the elements of the crime beyond a reasonable doubt." *Muse*, 83 F.3d at 679-80. As a result of this analysis, the court noted that the government must produce the stipulation at trial in order to carry its burden. *Muse*, 83 F.3d at 678. In *Wolf*, however, this court chose not to follow *Muse*, holding instead that a stipulation need not be read to the jury in order to support a conviction. 134 Wn. App. at 201.

[11] The Washington Supreme Court Committee on Jury Instructions has explained that, where a defendant stipulates to an element of a charged offense, such a stipulation also "amounts to a partial waiver of the right to trial by jury." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.77 cmt. at 165 (3d ed. 2008) (noting that, because stipulation is partial waiver of defendant's right to jury trial, "the best practice is to have the defendant sign a written stipulation and have it reviewed and acknowledged in open court").

or she is charged, the defendant relinquishes not only the "Fifth Amendment requirement of proof beyond a reasonable doubt" but also the interrelated "Sixth Amendment requirement of a jury verdict" on that element. *Sullivan,* 508 U.S. at 278.

¶40 Here, Humphries was charged with unlawful possession of a firearm in the first degree. A person is guilty of this crime "if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense." RCW 9.41.040(1)(a). Defense counsel stipulated to the fact that, at the time of his arrest, Humphries "had previously been convicted of a serious offense." The stipulation established the fact of Humphries' prior conviction—an element of the crime of unlawful possession of a firearm in the first degree. Accordingly, this stipulation waived Humphries' interrelated Fifth and Sixth Amendment rights that required the jury—in order to find him guilty of the crime charged—to determine that the prosecution had met its burden of proof on every element of the crime alleged.

¶41 The question presented, then, is whether a waiver of these rights can be validly accomplished by a stipulation agreed to by defense counsel over a defendant's personal, voiced objection. This issue has not been previously addressed in Washington. It is, however, well settled that a waiver of constitutional rights must be knowing, intelligent, and voluntary. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano,* 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

¶42 The constitutional rights requiring a jury to determine, beyond a reasonable doubt, that the State has proved

every element of the crime charged are of fundamental importance. *See In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required."); *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) (the right to trial by jury in serious criminal cases is "fundamental to the American scheme of justice"). Our Supreme Court has characterized a defendant's right to put the prosecution to its proof as an "important right to due process of law." *State v. Murdock*, 91 Wn.2d 336, 341, 588 P.2d 1143 (1979). In *Murdock*, the court determined that the State must introduce competent evidence of a defendant's prior convictions even where the defendant has admitted to pleading guilty to those crimes in his offer of proof. 91 Wn.2d at 340-41. Because a court must " 'indulge every reasonable presumption against waiver of fundamental constitutional rights,' " *Murdock*, 91 Wn.2d at 341 (internal quotation marks omitted) (quoting *Zerbst*, 304 U.S. at 464), the Supreme Court was unwilling to "presume appellant waived this important right to due process of law." 91 Wn.2d at 341.

¶43 Nevertheless, as the majority correctly points out, a stipulation to facts is generally not the equivalent of a guilty plea, and "due process [does] not require the trial court to ensure that a defendant understands the rights waived by a factual stipulation." *In re Det. of Moore*, 167 Wn.2d 113, 120, 216 P.3d 1015 (2009). Accordingly, a trial court has no obligation to determine on the record whether a defendant voluntarily and intelligently waived his right against compulsory self-incrimination, his right to be tried by a jury, and his right to confront his accusers, as is required where a defendant enters a guilty plea. *Adams v. Peterson*, 968 F.2d 835, 839 (9th Cir. 1992); *cf. Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (setting forth standard to be applied in determining if guilty plea is voluntarily made). Instead, a trial court may *presume* that a defendant has agreed to his counsel's

stipulation to a "crucial fact" where it "is entered into the record in open court in the presence of the defendant." *United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980).

¶44 This presumption, however, is not an irrebuttable one. As the Ninth Circuit has explained, although a trial court is entitled to presume that a defendant consents to his counsel's decision to stipulate to facts constituting an element of the charged offense, where the accused expressly objects to that decision, the court cannot rely on this presumption to accept the stipulation. *Ferreboeuf*, 632 F.2d at 836. A defendant's "convictions are valid only if he voluntarily and knowingly agreed to the stipulation," *Adams*, 968 F.2d at 843, and a defendant is not bound by a stipulation where the "defendant indicates objection." *Ferreboeuf*, 632 F.2d at 836. Because the stipulation to an element of a charged crime constitutes a waiver of the constitutional rights that require a jury to determine whether the State has proved each element of the charged crime beyond a reasonable doubt, such a stipulation is invalid where the accused expressly disagrees with the decision to stipulate.[12]

¶45 Here, the stipulation was accepted by the trial court and read to the jury over Humphries' voiced objection. At the time that the stipulation was offered to the court,

---

[12] As the majority correctly notes, a stipulation to a prior conviction is certainly a matter of trial strategy. Indeed, because the admission of the name and nature of a prior offense carries with it the risk of unfair prejudice to a defendant, where a defendant offers to stipulate to the existence of an unnamed prior conviction that is an element of the charged offense, a trial court violates ER 403 by not accepting the stipulation. *Old Chief v. United States*, 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Moreover, it is true that "the choice of trial tactics, the action to be taken or avoided, and the methodology to be employed must rest in the attorney's judgment." *State v. Piche*, 71 Wn.2d 583, 590, 430 P.2d 522 (1967). Nevertheless, the waiver of a constitutional right—even where strategic considerations inform that choice—cannot be involuntary. *See, e.g., State v. Woods*, 143 Wn.2d 561, 608-09, 23 P.3d 1046 (2001) (holding that waiver of capital defendant's constitutional right to present relevant evidence in mitigation for the purposes of sentencing must be "knowing, intelligent, and voluntary" but that, because decision "is one that is influenced by trial strategy," a judge may presume a knowing waiver from the defendant's conduct).

defense counsel explained that Humphries had refused to sign the document because he was not "in agreement" with counsel's decision regarding the stipulation. In these circumstances, the trial court was no longer entitled to presume the voluntariness of the waiver of Humphries' rights—by objecting to the stipulation, Humphries made clear that he had no desire to relinquish the interrelated trial rights that required the prosecution prove to the jury every element of the charge against him.[13] Because the stipulation was not voluntary, it was not a valid waiver. Accordingly, the trial court erred by accepting this stipulation and permitting it to be read to the jury.

## III

¶46 The majority does not voice disagreement with the foregoing discussion. Instead, it relies upon Humphries' subsequent decision to sign a written document purporting to stipulate to the fact of a prior conviction in order to hold that this error has not been preserved for appellate review. By signing this document, the majority reasons, Humphries either validly waived his constitutional rights (thus rendering the trial court's initial error in accepting the stipulation a nullity) or, in the alternative, abandoned his prior objection to the stipulation (thus failing to preserve the issue for appeal). Neither line of reasoning withstands scrutiny.

¶47 The majority's reliance on the doctrine of waiver is misplaced in the circumstances presented here. Indeed, as an initial matter, it must be asked what it is that the majority believed happened as result of Humphries' "waiver." It is unquestioned that, over his personal, voiced objection, the stipulation was accepted by the court and read to the jury, that the jury was later read its instructions

---

[13] Of course, it is rare for a defendant to object, on the record, to defense counsel's decision to stipulate to the fact of a prior conviction. Accordingly, in the vast majority of cases, the defendant's consent to the stipulation may properly be presumed, *Ferreboeuf*, 632 F.2d at 836, and a trial court will not err by accepting the stipulation.

from the court, and that closing arguments were delivered to a set of jurors who were aware of the stipulation. Accordingly, the case was essentially over by the time defense counsel told the court that Humphries had changed his mind and would sign the document. All the evidence was already in. The jury had been instructed. The jury had already heard closing arguments. Indeed, the jury had already been sent back to the jury room to have lunch and then begin its deliberations. The game was over, and Humphries' signature on the document changed exactly nothing.

¶48 Moreover, Humphries' signature on the document conforms to none of the standards governing the waiver of important constitutional rights. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). As the majority itself notes, the validity of a waiver depends upon the circumstances of each case. *See State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994) (citing *Zerbst*, 304 U.S. at 464).

¶49 Here, over Humphries' objection and in his presence, the initial stipulation was accepted by the trial court and read to the jury. Counsel explicitly informed the trial court that Humphries did not agree to the stipulation. In response, the trial court stated that Humphries' assent was not required and accepted the stipulation. Nothing about these events would give Humphries knowledge of his right to refuse to agree to the stipulation. Instead, Humphries would naturally believe—as he had been incorrectly informed by both the trial court and defense counsel—that his consent to the stipulation was immaterial.

¶50 Accordingly, it cannot be simply presumed—as the majority would have it—that Humphries' signature on the document constituted a knowing and intelligent waiver of his constitutional rights. The record reflects that

Humphries had been told only that his consent to the stipulation was irrelevant. There is no indication that Humphries had somehow come to understand the consequences of his signature by the time that he affixed it to the stipulation at the conclusion of the trial. By signing the document, Humphries did no more than acquiesce to the unanimous (and incorrect) opinion of his counsel and the trial court. Because the record makes clear that this act was done without "sufficient awareness of the relevant circumstances and likely consequences," *Brady*, 397 U.S. at 748, it was neither knowing nor intelligent. Thus, there was no waiver, and certainly no valid waiver, of Humphries' constitutional rights.

¶51 Nor I do agree that Humphries' eventual decision to sign a document following closing arguments constituted an abandonment of his initial objection, serving to preclude appellate review of this issue. By signing this document, so the argument goes, Humphries withdrew his initial objection to the stipulation, thus failing to preserve the issue for appeal.

¶52 The majority first cites to RAP 2.5(a) for the proposition that Humphries is not entitled to appellate review of his claim. Pursuant to this rule, an appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a). Although an exception to this rule permits a party to raise, for the first time on appeal, a "manifest error affecting a constitutional right," RAP 2.5(a)(3), in this case, the majority informs us, the trial court's error, even if constitutional in magnitude, was not "manifest" because this error did not have " 'practical and identifiable consequences in the trial of the case.' " *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007) (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

¶53 RAP 2.5(a), however, applies only in circumstances wherein the defendant *did not object at trial*, thus depriving the trial court of the opportunity to make a ruling to correct

the error. There is no need to determine if an exception applies where the rule itself is inapplicable. Here, Humphries himself lodged a timely objection to the trial court's acceptance of the stipulation—an objection that the trial court promptly overruled, opining that Humphries' view on the issue was irrelevant. Because the trial court was fully apprised of Humphries' objection at the time of its ruling, RAP 2.5(a) is inapplicable and the majority's reliance upon it improper.[14]

¶54 Nor can Humphries' signature on the document be viewed as an abandonment of a request to exclude evidence of the stipulation. The majority relies on *State v. Valladares*, 99 Wn.2d 663, 664 P.2d 508 (1983), for the principle that a defendant may waive constitutional rights by affirmatively withdrawing an objection. Of course, as discussed above, Humphries' acquiescence to the trial court's incorrect ruling was neither knowing nor intelligent and, accordingly, does not constitute a valid waiver of constitutional rights.

¶55 In addition, however, the principles set forth in *Valladares* are inapplicable for yet another reason. In *Valladares*, the defendant initially objected to the admission of evidence but then affirmatively withdrew the objection by withdrawing his motion to suppress. 99 Wn.2d at 672. The trial court then ruled the evidence admissible. Critically, however, the trial court took no action prior to the withdrawal of the objection. Accordingly, the admission of the evidence—the alleged constitutional error—took place only *after* all objection to it had been abandoned. *See also State v. Hayes*, 165 Wn. App. 507, 516, 520, 265 P.3d 982 (2011) (relying on *Valladares* to find waiver of Sixth Amendment right to confrontation where defendant deliberately declined to interpose objection prior to ruling ad-

---

[14] Indeed, the majority's analysis fails even on its own terms. Given that the stipulation was the only evidence presented at trial of Humphries' previous conviction, it would strain credulity to accept the majority's suggestion that the trial court's error in accepting the stipulation had no practical and identifiable consequences in the case.

mitting out-of-court statements), *petition for review filed*, No. 86893-0 (Wash. Jan. 10, 2012).

¶56 By contrast, in this case the trial court admitted the evidence over Humphries' personal, voiced objection. Unlike the situation in *Valladares* and *Hayes*, there was no decision to abandon the objection prior to the final ruling of the trial court. There was no waiver.

IV

¶57 The majority seeks refuge in the harmless error doctrine as an alternative ground for upholding Humphries' conviction. However, because there is no basis in the record to support a finding of harmless constitutional error, I must again disagree.

¶58 A constitutional error will be deemed harmless only where an appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002). This determination is made by utilizing the "overwhelming untainted evidence" test. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985). The reviewing court must determine whether—after the erroneously admitted evidence is excluded from consideration—the untainted evidence admitted at trial was nevertheless so overwhelming that it necessarily leads to a finding of guilt. *Smith*, 148 Wn.2d at 139.

¶59 Here, the prosecution offered absolutely no evidence of Humphries' previous conviction of a serious offense other than the stipulation itself. It is immaterial that the State "was fully prepared to present evidence" of a prior conviction, as the majority hypothesizes—the only proper appellate focus is on the evidence that was actually "admitted at trial."[15] *Smith*, 148 Wn.2d at 139. Because there was

---

[15] Similarly, it makes no difference that such evidence was offered at sentencing.

absolutely no untainted evidence of a previous conviction adduced at trial, the trial court's error in accepting the stipulation was not harmless.

¶60 For all of the reasons set forth above, I respectfully dissent.

Reconsideration denied November 5, 2012.

Review granted at 177 Wn.2d 1007 (2013).