FILED
COURT OF APPEALS
DIVISION II

2014 JUL 22 AM 10: 24

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Personal Restraint Petition of | No. 44478-0-II |
| CHARLES J. DAVIS, | |
| Petitioner. | UNPUBLISHED OPINION |

HUNT, J. — Charles J. Davis challenges his previously affirmed jury trial conviction for first degree rape in a personal restraint petition (PRP). He argues that (1) the trial court erred in closing the courtroom when the court requested that a spectator give up her seat to make room for the jury, (2) he received ineffective assistance when his counsel failed to renew a motion to admit evidence that the rape victim may have engaged in prostitution, and (3) his appellate counsel was ineffective for failing to raise the trial court's alleged courtroom closure in his previous direct appeal. We deny his PRP.

## FACTS

### I. RAPE

On September 23, 2001, 16-year-old KC[1] arrived at the Lacey Transit Center to take the bus downtown. A group of men approached her from behind, told her to shut up, forced her into

---

[1] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered · that initials will be used in the body of the opinion to identify the juvenile victim involved.

the men's bathroom, and restrained her while at least one of the men vaginally raped her. After waiting for the men to leave, KC cleaned up and left the transit center. Despite significant pain, initially KC told no one about the rape.

The next day at school, however, she told the school nurse and her mother, who took her to the emergency room. Hospital staff examined KC, administered a rape kit, and collected a deoxyribonucleic acid (DNA) sample. At the hospital, KC also spoke about the rape with Lacey Police Department Detective Beverly Reinhold. Several weeks later, KC ran away from home with a friend, Jenny Anderson, because according to KC, her parents did not believe that she had been raped.

At that time, law enforcement could not find any suspects based on the DNA sample recovered from KC. But about eight years later, in April 2009, the Washington State Patrol Crime Lab matched the sample to the DNA profile of Davis and subsequently arrested him. In June 2009, the State charged Davis with one count of first degree rape.

## II. PROCEDURE

Before trial, Davis moved to admit evidence of KC's past sexual behavior under the "rape shield" statute, former RCW 9A.44.020 (1975), to support his defense that the sexual intercourse had been consensual, not rape. In support, he offered a declaration from Anderson stating her belief that KC had prostituted herself in 2001. Davis also asked the trial court to "provisionally admit this evidence in light of corroborating testimony by Mr. Davis should he testify at trial." Br. of Pet'r (Ex. G at 22). The trial court denied Davis's motion, ruling that the evidence was not admissible because (1) at that time there was no evidence indicating that Davis and KC had sex as an act of prostitution and, therefore, the evidence was not relevant; (2)

Anderson's "prostitution" opinion was outside her personal knowledge; (3) the prejudicial effect of the proffered evidence outweighed its probative value; and (4) exclusion of the evidence would not result in a "substantial denial of justice" to Davis. Br. of Pet'r (Ex. G at 26). The trial court further noted, however, "[M]y ruling today is based on the posture of the case before me at this time. If circumstances change, could the matter be brought back? Well, there could at least be an argument that I should consider additional facts." Br. of Pet'r (Ex. G at 26-27).

During jury selection, the trial court asked one of the spectators to give up her seat for the jury. When the spectator did not move immediately, the bailiff walked over and whispered to the spectator, after which she stood up and left the courtroom. At no time did the trial court expressly exclude spectators from the courtroom, nor at any point did Davis object to the trial court's request for the spectator to move.

At trial, Davis testified in his own defense that he and KC had engaged in a consensual, prostitution-related sexual encounter at the Lacey Transit Center. His counsel did not renew his earlier request to introduce Anderson's testimony, nor does the record show that he attempted to call Anderson as a witness.

When the trial court discussed the jury instructions with counsel, Davis's counsel stated,

> Your Honor, just one housekeeping matter. The defense or myself did indicate at the beginning of the trial that [the trial court's] previous ruling regarding the testimony of Jenny Anderson will be revisited. I have rested my case. *I have not asked this Court to revisit that ruling, and I'm not planning on doing so.*
> THE COURT: Good. I think the ruling in light of the evidence presented is still an appropriate ruling. Okay.

Br. of Resp't (App. C at 302) (emphasis added). The jury found Davis guilty of first degree rape. *State v. Davis*, noted at 162 Wn. App. 1037, 2011 WL 2639279, at *3 (2011), *review denied*, 173 Wn.2d 1007 (2012).

3

No. 44478-0-II

## B. Direct Appeal

Davis appealed his conviction, arguing that (1) the trial court erred in refusing to admit evidence of KC's prior sexual conduct, thus violating his constitutional right to confront witnesses; (2) the evidence was insufficient to support his conviction; and (3) he had received ineffective assistance of trial counsel. *Davis*, 2011 WL 2639279, at *1. Division One of our court held that Davis had failed to preserve the first issue because he failed to renew his motion to admit Anderson's testimony, but that even if Davis had preserved the issue, the trial court did not abuse its discretion in excluding the evidence. *Davis*, 2011 WL 2639279, at *3. Our court rejected Davis's other arguments and affirmed. *Davis*, 2011 WL 2639279, at *1.

Davis now seeks relief from his judgment and sentence by a PRP.

## ANALYSIS

## I. NO COURTROOM CLOSURE

Davis contends that when the trial court asked a spectator to "give up a seat for the jury," the trial court violated his right to a public trial by "effect[ing] a courtroom closure requiring reversal and remand for a new trial." Br. of Pet'r at 21. We agree with the State that the trial court's asking one spectator to give up her seat to a prospective juror was not a courtroom closure because the trial court did not exclude the spectator from the proceedings and the courtroom remained open to the public.

In support of his PRP, Davis submitted a declaration that (1) on the day of jury selection, the presiding judge asked a spectator to move to allow space for members of the jury; (2) when the spectator did not immediately move, the bailiff walked over and whispered to her, after which the spectator walked out of the courtroom; and (3) Davis believes that the bailiff asked the

4

spectator to leave. The record does not support Davis's conclusion that the bailiff asked the spectator to leave. Nor did Davis voice such an objection to the trial court or argue that the trial court was thereby closing the proceedings, thus triggering a *Bone-Club*[2] inquiry. Nothing in the record even suggests that the trial court closed the proceedings to the public. We hold that there was no courtroom closure and, thus, no violation of Davis's public trial right.

Furthermore, the trial court's decision to rearrange spectator seating to accommodate a juror fell within its discretion to manage the courtroom. *See State v. Collins*, 50 Wn.2d 740, 747-48, 314 P.2d 660 (1957) (where trial court permitted members of public to remain in courtroom, court's decision to restrict additional members of the public during State's closing arguments did not violate defendant's right to public trial and fell within trial court's discretion to manage the courtroom); *see also State v. Gregory*, 158 Wn.2d 759, 816, 147 P.3d 1201 (2006) (trial court has "inherent authority" and "broad discretion to regulate the conduct of a trial"). Thus, Davis's courtroom closure argument fails.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

### A. Trial

Davis also argues that he received ineffective assistance when, after testifying that his sexual intercourse with KC had been a consensual act of prostitution, his trial counsel failed to renew a motion to admit Anderson's testimony (that she had witnessed KC appear to engage in prostitution-related activities back in 2001). Davis contends that even if failure to renew the motion could be considered trial strategy, it was neither "legitimate" nor a "reasonable decision[]," thus falling below an "objective standard of reasonableness." Br. of Pet'r at 11-12;

---

[2] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

*see State v. Thomas*, 109 Wn.2d 222, 232, 743 P.2d 816 (1987). Davis also argues that Anderson's statement would have been admissible to corroborate his testimony and, therefore, his counsel's failure to renew the motion prejudiced him.[3] Holding that Davis fails to show the deficient performance prong of the ineffective assistance of counsel test, we do not reach the prejudice prong, and Davis's ineffective assistance of counsel argument fails.

To prevail in a PRP, the petitioner must show that he or she is unlawfully restrained. RAP 16.4. Under RAP 16.4(c)(2), unlawful restraint is a conviction obtained "in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." Here, Davis's claim involves a constitutional violation, so he must demonstrate prejudice by a preponderance of the evidence rather than the higher standard of a complete miscarriage of justice for most collateral claims. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 874, 16 P.3d 601 (2001); *see In re Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990); *In re Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984).

In addition to his burden to show prejudice to prevail in his PRP, in order to support his ineffective assistance of counsel claim, Davis must show that counsel's performance fell below an objective standard of reasonableness and "a reasonable probability that the outcome of the

---

[3] Davis contends that Anderson's statement about KC's prior prostitution-related activities would have been admissible under the "rape shield" statute, former RCW 9A.44.020, because KC's activities were "distinctive sexual patterns." Br. of Pet'r at 13. He argues that Washington courts have held that evidence of a complainant's prior acts of prostitution may be admissible to prove consensual prostitution in defending a rape charge. *See State v. Morley*, 46 Wn. App. 156, 158, 730 P.2d 687 (1986); *Gregory*, 158 Wn.2d at 784-85.

But even if Anderson's statement would have been relevant and admissible in light of Davis's testimony, Davis does not assign error to the trial court's refusal to admit Anderson's testimony—only to his counsel's decision not to renew the motion to admit evidence—so this court need not decide whether the evidence was admissible. RAP 10.3(a); *see Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

trial would have been different absent counsel's deficient performance." *State v. Humphries*, 170 Wn. App. 777, 797, 285 P.3d 917 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)), *review granted*, 177 Wn.2d 1007 (2013); *see also In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012). Failure to meet either prong of this test "defeats an ineffective assistance claim." *Humphries*, 170 Wn. App. at 797 (citing *Strickland*, 466 U.S. at 697).

In Davis's direct appeal, Division One of our court stated that even if Davis had preserved this evidentiary issue, "the trial court did not abuse its discretion in ruling that [Anderson's testimony] was not admissible." *Davis*, 2011 WL 2639279, at *3. Thus, Davis cannot show deficient performance in trial counsel's failure to renew a previously lost motion to admit this evidence.[4] Therefore, his ineffective assistance of trial counsel argument fails.

## B. Appeal

Davis also claims, "Failure of appellate counsel to raise an open courtroom issue on appeal is deficient and prejudicial and constitutes ineffective assistance of appellate counsel." Br. of Pet'r at 25 (citing *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004)). Because, as we have already held, there was no courtroom closure and no denial of Davis's public trial rights, it was not deficient performance for appellate counsel not "to raise an open courtroom issue on appeal." Br. of Pet'r at 25. And we need not address the prejudice

---

[4] Although we need not address the prejudice prong of the ineffective assistance of counsel test, we note our agreement with the State that Davis cannot show a reasonable probability that a motion to renew admission of Anderson's testimony would have affected the outcome of the trial. The record shows that when Davis's trial counsel announced he would not renew his motion to admit Anderson's testimony, the trial court stated that it would not have changed its earlier ruling that the evidence was inadmissible.

7

prong of the ineffective assistance of counsel test to hold that Davis has failed to carry his burden to support this argument.

We deny Davis's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Bjorgen, A.C.J.

Lee, J.