Ronald **JORDAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 7980.

United States Court of Appeals Tenth Circuit.

May 3, 1965.

Stephen LeSatz, Jr., Denver, Colo., for appellant.

Jack R. Parr, Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., with him on brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

MURRAH, Chief Judge.

The appellant, Ronald Jordan, was convicted by a jury upon a three count indictment for the violation of the narcotic laws (i. e. 26 U.S.C. §§ 4704(a), 4705(a) and 21 U.S.C. § 174) and sentenced to fifteen years on each count to run concurrently. On appeal he complains of (1) refusal of the Court to specially instruct the jury on the credibility of the informer; (2) undue curtailment of cross-examination to impeach the informer's testimony; (3) failure to properly define "narcotic drug"; (4) insufficiency of the evidence to support his conviction on count II, i. e. sale of narcotics under § 4705(a); and (5) prejudicial conduct of the trial generally.

In Todd v. United States, March Term, 10 Cir., 345 F.2d 299, decided this day involving the testimony of the same informer, we suggested the desirability of giving cautionary instructions in all cases of this kind but refused to reverse for failure to give such instructions in view of the substantial corroboration of the informer in critical respects and the trial court's careful instructions on credibility generally. The informer testimony in this case follows the same evidentiary pattern as the following facts will demonstrate.

On March 14, 1964, the informer called appellant and "asked him if he could get me any heroin and he said yes, that he thought he could." The informer then conveyed this information to a Federal Narcotics Agent and testified that on the same afternoon the appellant and Joe Don Sarsycki came to his house, inquired of him if he still desired to purchase heroin and if he "had the money then." Informer stated that he told the appellant he did not have the money at this time but "that I would see him about 4:00 o'clock at McDonald's Drive-In and give it to him then." After appellant and his friend left the informer's house, he met with a Federal Narcotics Agent and a police officer in the parking lot of another Drive-In restaurant. At this time, the officers searched the informer and the automobile in which he was to meet the appellant; all of his money was taken; and he was given marked money. The informer then testified that the police officer "drove the (searched) car to McDonald's Drive-In * * * whereas I went with Agent Rose in his car, and went out there." Upon arrival at the Drive-In, informer entered the searched automobile and waited for the appellant, while the officers observed from across the street. After twenty-five to thirty minutes had elapsed, the appellant and Joe Don Sarsycki arrived in a red pickup. Appellant then got into the car with the informer and inquired if he had the money. The informer answered "yes" and "I asked him how long it would take him to have the stuff there and he said not long. So I gave him the (money) * * * He then got out of my car and got back in the pickup with Joe Don and left the Drive-In. * * * I sat there for about twenty to twenty-five minutes, and he and Joe Don come back down May Avenue and pulled in the Drive-In and pulled back up again on the east side of my car." Appellant got into the informer's car and "handed me a package, possibly maybe an square inch. I believe it was notebook paper or some-

thing like that, a package wrapped in notebook paper." As soon as appellant left the Drive-In, the officers came to the car and were handed the package by the informer. It was later found to contain heroin.

The police officer corroborated the informer's testimony in all material respects except the actual exchange of the money and the package. The Federal Narcotics Agent also corroborated the informer's testimony in the same respects and added that he observed the exchange of the money and the package through binoculars from his car across the street.

■ The same trial judge gave substantially the same, if not identical, instructions on credibility as in Todd v. United States, supra. He refused to give the appellant's requested cautionary instruction on credibility of an informer "since the informer's testimony is strongly corroborated and the instructions given regarding the credibility of the witnesses adequately cover this case." We affirm the ruling of the trial court though, as we have indicated, it would have been better practice to call specific attention to the character of the informer's testimony.

■ The contention of undue curtailment of cross-examination is completely without merit since the record clearly indicates that the trial judge sustained objections to further cross-examination of the informer only when it appeared that the information solicited was merely repetitious or entirely immaterial. The Judge's remarks in these instances were in no way prejudicial to appellant's case.

■ Complaint of the failure of the Court to properly define "narcotics" within the meaning of 26 U.S.C. 4731 [1] based upon the assertion that the jury was left to speculate on whether "heroin" was in fact a narcotic. But, the Court will take judicial notice of the fact that heroin is a derivative of opium, hence a narcotic within the meaning of the statute. There was no issue of fact to submit to the jury. See Naval v. United States, 9 Cir., 278 F.2d 611; Jackson v. United States, D.C., 225 F.Supp. 53.

■ We need not consider the sufficiency of the evidence to prove an unlawful sale of narcotics under § 4705(a) as alleged in Count II since the sentence on this Count was made to run concurrently with the sentences on the other two Counts of the indictment, validity of which we sustain. See Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; Travis v. United States, 10 Cir., 269 F.2d 928; Cummings v. United States, 10 Cir., 289 F.2d 904.[2]

■ The appellant attacks the conduct of the trial generally as prejudicial to his right to a fair trial. On the contrary, we think the record affirmatively shows that the trial court conducted the trial with commendable fairness and scrupulous regard for the rights of the defendant.

Judgment is affirmed.

1. Section 4731 in relevant part provides:
"§ 4731. Definitions
"(a) Narcotic drugs.—The words 'narcotic drugs' as used in this part shall mean any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:
"(1) Opium, isonipecaine, coca leaves, and opiate;
"(2) Any compound, manufacture, salt, derivative, or preparation of opium, isonipecaine, coca leaves, or opiate;
"(3) Any substance (and any compound, manufacture, sale, derivative, or preparation thereof) which is chemically identical with any of the substances referred to in clauses (1) and (2);
except that the words 'narcotic drugs' as used in this part shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine. * * *"

2. In any event it is worth mentioning that the trial court did give a procuring or purchasing agent instruction applicable to this Count of the indictment substantially in the language requested. See Lewis v. United States, D.C.Cir., 337 F.2d 541 and cases cited there.