**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marie L. FERREBOEUF,
Defendant–Appellant.**

No. 79–1801.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1980.

Decided Nov. 17, 1980.

Alan M. Caplan, Bushnell, Caplan & Fielding, San Francisco, Cal., for defendant–appellant.

J. Ronald Sim, Asst. U.S. Atty., Seattle, Wash., for plaintiff–appellee; Michael P. Ruark, Asst. U.S. Atty., Seattle, Wash., Gloria J. Shanor, Atlanta, Ga., on brief.

Before TRASK, GOODWIN, and FARRIS, Circuit Judges.

TRASK, Circuit Judge:

Appellant challenges her conviction of (1) being an accessory after the fact to murder in violation of 18 U.S.C. §§ 3, 1111, 1114, and (2) aiding and abetting an assault on a federal officer in violation of 18 U.S.C. §§ 2, 111, 112. We affirm.

I

On the evening of May 24, 1979, appellant and Baker attempted to enter the United States from Canada through the port of entry at Lynden. After being routinely questioned by an immigration officer, Reimer, they were escorted inside for further questioning by a customs inspector, Ward. Ward had the couple fill out declaration forms while Reimer returned outside.

After a few minutes, Reimer heard a bang from inside the building. He turned toward the door, heard another bang, and then saw Ward crash through the window pane of the closed door. The door then opened and Baker appeared in the doorway, pointing the gun at Reimer and firing two shots. Reimer fled, being unarmed.[1]

As Reimer retreated, the couple ran to their car and drove off. A federal agent, McClary, followed them in his car. During the ensuing high speed chase, appellant watched McClary and frequently turned and spoke to Baker as though she were acting as his lookout.

Although the couple temporarily eluded pursuing officers, appellant was captured at about 2:00 a.m. on the following day. She was booked at 3:30 a.m. and one–half hour later was visited and advised of her *Miran-*

---

1. The door was held shut by a spring powered closing mechanism. Baker held his gun with two hands in a "combat position," and did not hold the door open. Reimer observed appellant crouched behind Baker and beside the door. The government's theory at trial was that appellant held the door open for Baker while he fired at Reimer.

da rights by two customs agents. Appellant asked to speak with her attorney and was not questioned further. She was permitted to call her attorney's office, but he was unavailable.

At about 1:00 p.m., two customs agents again visited appellant. Appellant indicated that she would not answer questions about the incident at the port of entry, but would not foreclose inquiry about other matters. Knowing that appellant had declared her marital status as "single" when she was arrested, one agent asked her how long she had known Baker. She replied, "A month." Both statements were false; appellant and Baker were husband and wife.

## II

On this appeal, appellant argues that (1) the false pretrial statement to the customs agent should have been suppressed; (2) pretrial publicity was so great that either the suppression hearing should have been closed or appellant should have been permitted to utilize a "recollection testing" procedure to examine prospective jurors; (3) the district court abused its discretion by neither ordering disclosure of grand jury materials nor conducting an in camera review to ensure that disclosure was inappropriate; (4) the district court erred in accepting a factual stipulation without first determining whether it had been voluntarily given; (5) the consecutive sentences she received violate double jeopardy; and (6) the district court improperly enhanced her sentence on the basis of untrue information contained in the prosecutor's presentencing memorandum.

## A

Appellant contends that the district court should have suppressed her pretrial statement that she had known Baker for one month, because it was elicited in violation of either *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or the *McNabb–Mallory* rule as embodied in 18 U.S.C. § 3501.

■ We need not decide whether appellant is correct, because we find that even if the district court erred in failing to suppress appellant's statement, the error was harmless. The government introduced her statement in order to prove that she attempted to hide the nature of her relationship to Baker. The government, however, also introduced appellant's booking sheet, on which she had declared that her marital status was single. This evidence was equally as probative of the fact that appellant attempted to conceal her relationship with Baker from the authorities. We are certain beyond a reasonable doubt, therefore, that any error in the admission of appellant's statement did not contribute to her conviction. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Egger v. United States*, 509 F.2d 745, 747 (9th Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 61 (1975).

## B

Appellant next contends that her trial was preceded by media publicity which was so substantial and prejudicial that the trial judge erred in failing either to close a pretrial suppression hearing to the public, or permit appellant's attorney to use a "recollection testing" procedure in conducting voir dire of prospective jurors.

"Unless a trial judge clearly has erred in his estimation of the action needed to uncover and prevent prejudice from pretrial publicity, an appellate court should not intervene and impose its estimate." *United States v. Giese*, 597 F.2d 1170, 1184 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979) (*quoting United States v. Polizzi*, 500 F.2d 856, 880 (9th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975)). *See generally Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). In the present case, the district judge found that the publicity surrounding appellant's arrest and the facts of her crime was no more than usual. This finding is not clearly erroneous.

■ Moreover, any error committed by failing to close the hearing was harmless. As the Supreme Court pointed out in *Gannett, supra,* the reason for closing a pretrial hearing is to avoid exposing members of the jury pool to inadmissible information that is prejudicial to the defendant. 443 U.S. at 378, 99 S.Ct. at 2904. In the present case, the only evidence involved in the suppression hearing concerned appellant's pretrial statement. This statement was ruled admissible and introduced into evidence at trial. Thus, the district judge's failure to close the pretrial hearing did not prejudice appellant.

■ We also find no error in the district judge's refusal to permit defense counsel to conduct a "recollection test" as part of voir dire. Of appellant's three–day trial, one full day was utilized for jury selection. The district judge thoroughly questioned the jurors to ensure that they were unaffected by pretrial publicity. The judge also warned the jurors to avoid exposure to media reports of the trial and admonished the jurors that any details they suddenly remembered during the trial were not to be considered. All of the jurors assured the court that they would base their decision solely upon the evidence received at trial.

We review the scope of the questions asked and procedures utilized during voir dire only for abuse of discretion. *See United States v. Rosales–Lopez,* 617 F.2d 1349, 1353 (9th Cir. 1980). Questions utilized during voir dire must be "reasonably sufficient to test the jury for bias or partiality." *United States v. Baldwin,* 607 F.2d 1295, 1297 (9th Cir. 1979).

■ Appellant's proposed test was rejected by the district judge because it would have exposed the prospective jury to the very news articles which appellant had claimed were prejudicial. This ruling did not constitute an abuse of discretion. The questions propounded by the district court adequately screened out those prospective jurors who had already reached some judgment of innocence or guilt or who had otherwise evinced an inability to render an impartial judgment based solely upon the

evidence presented at trial. Appellant apparently equates knowledge of some aspects of her case with bias or prejudice; we do not. Ferreboeuf was not entitled to a jury composed only of persons who had no prior knowledge of her case.

C

■ Appellant's next contention is that the district court should have ordered disclosure of grand jury materials or, alternatively, that the district court should have at least inspected the materials in camera prior to ruling on appellant's motion.

Appellant was not entitled to disclosure. Mere "unsubstantiated, speculative assertions of improprieties in the proceedings" do not supply the "particular need" required to outweigh the policy of grand jury secrecy. *United States v. Rubin,* 559 F.2d 975, 988 (5th Cir. 1977), *vacated on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978); *accord United States v. King,* 478 F.2d 494, 507 (9th Cir. 1973), *cert. denied,* 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). *See also United States v. Dixon,* 538 F.2d 812, 814 (9th Cir.), *cert. denied,* 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976).

Appellant's assertion of impropriety here is mere speculation, based only on the speed with which the indictment was returned. Although some district judges have examined grand jury materials in camera prior to ruling on disclosure motions, whether such action is necessary is left to the discretion of the trial judge. In this case, there was no indication that such an inspection would have been fruitful; Ferreboeuf was simply on a fishing expedition.

D

Appellant argues that the district judge erred in accepting her stipulation that she "knew" her husband had "committed the offense of murder." The stipulation was signed by appellant's attorney, but the district judge made no specific attempt to ascertain whether it was voluntarily given.

■ We need not consider the issue whether knowledge of the specific crime committed by the principal at the time that assistance is rendered is an element of the crime of accessory after the fact to murder.[2] We hold that even if such knowledge must be established, no voluntariness inquiry was required in this case before accepting the stipulation.

In *United States v. Terrack*, 515 F.2d 558 (9th Cir. 1975) we held that the procedures delineated in Rule 11 governing acceptance of a guilty plea were applicable solely to guilty pleas, and not to stipulations of fact which may be tantamount to guilty pleas. *Id.* at 560–61. We stated in *United States v. Miller*, 588 F.2d 1256 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), however, that "[i]t is the responsibility of the trial judge when accepting a stipulation or waiver to assure that it is voluntarily made." *Id.* at 1264. In both *Terrack* and *Miller*, the district judge had personally addressed the defendant and inquired whether he or she understood the stipulation and gave it voluntarily. In both cases, the defendant had stipulated to all facts necessary to establish guilt of the offense charged.

■ The case before us involved appellant's stipulation to only two elements of one of the offenses with which she was charged. Appellant asks that we make a rule requiring the trial court to question defendants personally as to the voluntariness of any stipulation of a crucial fact. This we decline to do. Such a rule would needlessly delay and confuse the conduct of a typical trial. See *United States v. Terrack*, 515 F.2d at 561 n.3. Instead, we hold that when a stipulation to a crucial fact is entered into the record in open court in the presence of the defendant, and is agreed to by defendant's acknowledged counsel, the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agrees to it through his or her attorney. Unless a criminal defendant indicates objection at the time the stipulation is made, he or she is ordinarily bound by such stipulation. *See, e.g., United States v. Adams,* 422 F.2d 515, 518 (10th Cir.) (dictum), *cert. denied,* 399 U.S. 913, 90 S.Ct. 2213, 26 L.Ed.2d 569 (1970); *Taylor v. United States,* 182 F.2d 473, 475 (9th Cir. 1950) (dictum); *United States v. Denniston,* 89 F.2d 696, 698 (2d Cir.) (guilty plea), *cert. denied,* 301 U.S. 709, 57 S.Ct. 943, 81 L.Ed. 1362 (1937); *Jones v. United States,* 72 F.2d 873, 874 (7th Cir. 1934) (stipulation of fact).

### E

The final two issues that appellant raises are without merit.

■ First, she contends that the two crimes of which she was convicted, accessory after the fact of murder and aiding and abetting an assault on a federal officer, arise from a single factual transaction, thereby prohibiting her conviction of both of them. Appellant fails to mention, however, that different acts supported the two charges. For the accessory after the fact charge, there was proof that she acted as lookout during the escape. For the assault aiding and abetting charge, there was proof that she held the door while Baker assaulted the officer. Moreover, the accessory charge required proof that Ward was murdered, whereas the aiding and abetting charge required proof that Reimer was assaulted. The fact that appellant herself did not commit the acts embodied in these elements is relevant only to whether she may be charged as a principal. *See generally United States v. Rosales–Lopez,* 617 F.2d at 1358.

---

2. The common law rule provided that a defendant was not guilty of being an accessory to a felony unless the government proved "that the accused knew that *such* felony had been committed by the principal felon." *State v. Williams,* 229 N.C. 348, 49 S.E.2d 617, 618 (1948) (emphasis added); *See Harrel v. State,* 39 Miss. 702, 80 Am.Dec. 95 (1861). This rule of common law, applied to the present case, would require the government to prove that appellant knew at the time she aided her husband's escape that he was guilty of murder, an element established only by the stipulation. *See generally* J. Miller, *Handbook of Criminal Law,* § 77, at 240 (1934); W. LaFave & A. Scott, *Handbook on Criminal Law,* § 66, at 522 (1972).

Second, Ferreboeuf contends that the district court erroneously considered false information in the presentence report and in the government's sentencing memorandum. It is well established that the district court may consider a wide range of information in determining the sentence to be imposed. *See United States v. Stevenson*, 573 F.2d 1105, 1108 (9th Cir. 1978); *United States v. Read*, 534 F.2d 858, 859 (9th Cir. 1976). In this case Ferreboeuf has failed to demonstrate that the information she objects to was false or misleading.[3] Further, Appellant has not demonstrated that the district court relied upon the disputed information in imposing her sentence.[4] *See United States v. Conforte*, 624 F.2d 869, 882–84 (9th Cir. 1980). *See generally United States v. Mills*, 597 F.2d 693, 697–98 (9th Cir. 1979).

The convictions are AFFIRMED.

3. Appellant was afforded an opportunity to rebut the disputed information and does not contend that any procedural defect occurred which denied her due process.

4. The court stated at the time of sentencing that the severity of the sentence was in proportion to the severity of the offenses.