
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**JOSHUA BRANDON PEREZ,**
Defendant-Appellant.

Supreme Court Case No.: CRA19-012
Superior Court Case No.: CF0737-18

## OPINION

## Cite as: 2021 Guam 18

Appeal from the Superior Court of Guam
Argued and submitted on January 25, 2021
Via Zoom video conference

Appearing for Defendant-Appellant:
Theresa G. Rojas, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Steven J. Haderlie, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr.
Tamuning, GU 96913

**E-Received**
12/6/2021 12:46:54 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]    Defendant-Appellant Joshua Brandon Perez appeals a final judgment of conviction finding him guilty of one count of Possession of a Schedule II Controlled Substance (as a Third Degree Felony) with a sentencing enhancement for Commission of a Felony While on Felony Release ("felony on felony release").  Perez also appeals his denied motion for judgment of acquittal.  After conviction for the possession charge and before beginning his trial for the felony on felony release, Perez signed a waiver of his right to a jury trial.  Perez was sentenced to six years in prison with credit for time served—one year for the possession charge and five years as a sentencing enhancement for commission of a felony while on felony release.  Perez alleges the trial court erred in finding sufficient evidence of the possession charge and seeks reversal of his conviction.  Perez also argues the jury-trial waiver was invalid and asks us to remand for further proceedings.  Perez also contends the sentencing enhancement was illegal because the underlying charge of his felony on felony release allegation was dismissed.  For the reasons discussed below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]    In December 2018, Sgt. Ephraim Amaguin of the Guam Police Department pulled over Perez for erratic driving.  During the traffic stop, police found methamphetamine and methamphetamine residue inside a purse and along the passenger-side floorboards.  Overall, the officers found an estimated 0.5 grams of methamphetamine, clear baggies, multiple glass pipes, torch lighters, a scale, and a book entitled *Secrets of Methamphetamine Manufacture: Including Recipes for MDA, Ecstasy, and Other Psychedelic Amphetamines*.

**[3]**      Perez was indicted on two charges: one count of Possession of a Schedule II Controlled Substance with Intent to Deliver, "in that he intentionally and knowingly possessed with intent to deliver a controlled substance, that is, an amphetamine-based substance," and one count of Possession of a Schedule II Controlled Substance, "in that he did unlawfully and knowingly possess a Schedule II controlled substance, that is, an amphetamine-based substance."  Record on Appeal ("RA"), tab 8 (Indictment, Dec. 18, 2018).  Before this indictment, Perez was indicted in Superior Court Case No. CF0538-18 for Attempted Burglary (As a Second Degree Felony).  Perez was on pretrial release at the time of his arrest in the present case.  As a result, both charges in this case were accompanied by a Notice of Commission of a Felony While on Felony Release in Case No. CF0538-18.

**[4]**      The case proceeded to a jury trial on the possession charges, with the felony on felony release allegations to be tried thereafter.  The jury found Perez not guilty of Possession of a Schedule II Controlled Substance with Intent to Deliver and guilty of Possession of a Schedule II Controlled Substance.  Before the close of trial, Perez orally moved for a judgment of acquittal and later filed a motion for acquittal, arguing there was insufficient evidence to sustain his conviction of Possession of a Schedule II Controlled Substance.  The trial court denied the motion.

**[5]**      In his motion for acquittal, Perez argued the People presented insufficient evidence to prove he possessed a Schedule II, amphetamine-based substance because there was no evidence that methamphetamine is an amphetamine-based substance.  The trial court denied Perez's motion.  The court found sufficient evidence of possession of an amphetamine-based substance, as the officers had confiscated small baggies of a substance that yielded presumptive positives for methamphetamine, and the officers visually identified the substance as methamphetamine.

Moreover, the trial court found the People had presented sufficient evidence for the jury to infer methamphetamine is an "amphetamine-based" substance because the jury had seen the title of the book *Secrets of Methamphetamine Manufacture: Including Recipes for MDA, Ecstasy, and Other Psychedelic Amphetamines*. Perez now appeals the trial court's denial of his motion for acquittal.

[6]     After the jury rendered its verdict, the court excused the jurors and addressed counsel about the special allegation for the commission of a felony while on felony release. During the initial trial, the court had asked Perez and defense counsel multiple times if he intended to waive his *Apprendi* rights. Before the initial trial, the court had the following exchange with defense counsel:

> THE COURT: . . . . And notwithstanding, the court is going to, if the jury goes into deliberation, I'm going to ask two alternate jurors to still be on standby, due to the fact that we may still have *Apprendi* hearing after that.
>
> And you explained that to your client, did you not?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: And you explained to him that the allegations would have extra time in jail, and he is –
>
> [DEFENSE COUNSEL]: Yes, Your Honor.

Transcripts ("Tr.") at 95 (Jury Trial, Feb. 12, 2019). During the trial itself, the court had the following exchange with defense counsel about the *Apprendi* waiver:

> THE COURT: . . . . Now the next part of this thing is the next charge that the court notes against the defendant for the special allegation, does he waive or does he want the same jury, because it's going to be the same jury that's going to come back, sir.
>
> Do you need a few minutes to discuss with him the impact of all of this?
>
> [DEFENSE COUNSEL]: Yes, Your Honor, I did discuss that already with him, but –

THE COURT: And?

[DEFENSE COUNSEL]: And, Your Honor, would the -- that hearing go forward today, or would we do it tomorrow afternoon?

. . . .

THE COURT: Or tomorrow and Thursday, and Friday if need be. And it's only one charge.

[DEFENSE COUNSEL]: Yes, Your Honor, that's fine, so –

THE COURT: He doesn't waive, he wants to go forward with it?

(Pause - Counsel and Defendant Confer)

. . . .

THE COURT: . . . . I do understand that there is one more item that the defendant needs to advise the court if he is going to waive or we're going to go forward for the second charge of Possession of a Schedule II Controlled Substance, Third Degree Felony, the jury had just found him guilty. However, there's another part of this matter, Notice of Commission of a Felony While on Felony Release. All right.

And [Prosecutor], just for the court's information as we go through this *Apprendi* trial and continuing for it tomorrow, the Commission of Felony While on Felony Release, I'd like the defendant to understand what the potential time is for jail on that one, what is it?

[PROSECUTOR]: So for the underlying charge of just simple possession, it's zero to five; for the felony on a felony release, what it states it says five to 25, and that five to 25 has to be served before any of the zero to five can be served, so he faces a potential five to 30.

THE COURT: Thank you. All right. Now having that information put forward, what the court is going to do being that we're going to have another hearing, just regarding the special allegation, the court is going to ask the same jury, . . . to come back tomorrow at two o'clock in the afternoon so we can take testimony.

Tr. at 14-16 (Jury Trial, Feb. 19, 2019).

[7]     The day the second jury trial was to begin, Perez signed an *Apprendi* waiver for the

special allegation of felony while on felony release. The written waiver states, in part:

> I further understand that the government would be required to prove to the jury beyond a reasonable doubt that I committed the present offense while on release in Case No. CF538-18 in order to ask the Court to sentence me beyond the statutory maximum sentence if I am convicted for the felony offense in the present case.

RA, tab 57 (Waiver of *Apprendi* Rights, Feb. 26, 2019). The court accepted the waiver, questioned counsel if this meant no jury would be needed for the charge, and dismissed the jurors.

[8] Before sentencing, the court dismissed without prejudice the prior felony charge in Superior Court Case No. CF0538-18. Final judgment was entered sentencing Perez to a six-year prison term. Perez was sentenced to five years of imprisonment, with credit for time served, for the special allegation of commission of a felony while on felony release; and to three years, with all but one year suspended and with credit for time served, for Possession of a Schedule II Controlled Substance (as a Third Degree Felony), to run consecutive and subsequent to the sentence for the special allegation. Perez timely appealed.

## II. JURISDICTION

[9] This court has jurisdiction over an appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-57 (2021)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[10] Whether the trial court "violated the constitutional rule established in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is a question of law that is reviewed *de novo*." *People v. Guerrero*, 2017 Guam 4 ¶ 16 (quoting *People v. Quitugua*, 2015 Guam 27 ¶ 32); *People v. Chong*, 2019 Guam 30 ¶ 7. We review the voluntary nature of a waiver *de novo*, and we review whether a

waiver is intelligent, knowing, and voluntary for clear error. *People v. Sangalang*, 2001 Guam 18 ¶ 10.

[11]    "Where a defendant has raised the issue of sufficiency of evidence by motion for acquittal in the trial court, the denial of the motion is reviewed *de novo*." *People v. Anastacio*, 2010 Guam 18 ¶ 10.

[12]    "We review the trial court's imposition of a sentence for abuse of discretion." *People v. Diaz*, 2007 Guam 3 ¶ 59; *People v. Damian*, 2016 Guam 8 ¶ 10.

## IV.  ANALYSIS

### A.  Perez's Written *Apprendi* Waiver

[13]    "Under *Apprendi*, a criminal defendant has a constitutional right to have every fact that increases the penalty for a crime submitted to the jury and proved beyond a reasonable doubt." *People v. Martinez*, 2017 Guam 23 ¶ 33 (citing *Apprendi*, 530 U.S. at 490; *Blakely v. Washington*, 542 U.S. 296 (2004)); *see also Guerrero*, 2017 Guam 4 ¶ 21.  A criminal defendant may waive this right to a jury trial "so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. . . .  Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements . . . ." *Blakely*, 542 U.S. at 310 (citing *Apprendi*, 530 U.S. at 488; *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968)).  A "*Blakely* waiver" allows the defendant to forgo another jury trial for sentence-enhancing allegations.

[14]    In *People v. Quitugua*, we acknowledged:

> Justice Scalia's comments in *Blakely* flow from the longstanding proposition that an accused in a criminal trial may waive his Sixth Amendment right to trial by jury if the waiver is made with express, intelligent consent, and agreed to by the People and the lower court. *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968) ("We hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial . . . ."); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 277–78 (1942) ("We have already held that one charged with a serious federal crime may dispense with his

Constitutional right to jury trial, where this action is taken with express, intelligent consent, where the Government also consents, and where such action is approved by the responsible judgment of the trial court.").

2015 Guam 27 ¶ 42.

[15] Guam law allows written waiver of a jury trial "with the approval of the court and the consent of the government." 8 GCA § 85.10 (2005); *see also United States v. Christensen*, 18 F.3d 822, 824-25 (9th Cir. 1994).[1] Therefore, one may waive their right to a jury trial for sentence-enhancing allegations if the waiver is express, intelligent, and with the court's and government's consent.

[16] Waiving a jury trial must be done "knowingly, intelligently, and voluntarily." *Guerrero*, 2017 Guam 4 ¶¶ 25-26 ("Because the Sixth Amendment protects a defendant's fundamental right to have a jury determination of facts that may alter the defendant's sentence, waiver of the right must also be made with 'express, intelligent consent, and agreed to by the People and the lower court.'" (quoting *Quitugua*, 2015 Guam 27 ¶ 42)); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Chong*, 2019 Guam 30 ¶ 20; *Martinez*, 2017 Guam 23 ¶ 33.

[17] "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." *Guerrero*, 2017 Guam 4 ¶ 25 (second alteration in original) (quoting *Zerbst*, 304 U.S. at 464). A written waiver, however, creates a presumption of a voluntary, knowing, and intelligent decision. *United States v. Shorty*, 741 F.3d 961, 966 (9th Cir. 2013) (analyzing Federal Rule of Criminal Procedure 23(a)). The Ninth Circuit has repeatedly held that when there is a written waiver, and no additional facts negating the voluntary, knowing, and intelligent nature of the waiver, reversal is unnecessary. *Compare Shorty*, 741 F.3d at 966, *and United States v. Cochran*, 770 F.2d 850,

---

[1] *Christensen* analyzed Federal Rule of Criminal Procedure 23(a), from which 8 GCA § 85.10 is derived. *See* 8 GCA § 85.10, Note.

851 (9th Cir. 1985), *with Christensen*, 18 F.3d at 825-26 (reversing because, despite written waiver, there was evidence defendant may have been mentally or emotionally unstable).

[18]     Additional explanation, questioning, or colloquy with the defendant is unnecessary if there is a written waiver and no other facts negating the voluntary, knowing, and intelligent nature of the waiver.  *See Chong*, 2019 Guam 30 ¶ 22 (citing *United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980)); *Shorty*, 741 F.3d at 966; *Christensen*, 18 F.3d at 825-26; *Cochran*, 770 F.2d at 851 ("[T]he failure of a district judge to conduct such an interrogation does not violate either the Constitution or Fed. R. Crim. P. 23(a); nor does it *ipso facto* require reversal." (internal citation omitted)); *see also United States v. Reyes*, 603 F.2d 69, 71 (9th Cir. 1979).  Generally, a court need not conduct a specific questioning of the defendant to determine if they agree with a stipulation made in open court in the defendant's presence and "agreed to by defendant's acknowledged counsel."  *See Ferreboeuf*, 632 F.2d at 836.  Under such circumstances, "the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agrees to it through his or her attorney."  *Id.*  However, the court must conduct an additional colloquy with a defendant seeking to waive the jury trial right if the defendant has a special disadvantage or disability, such as a language barrier or a significantly low IQ.  *See United States v. Bailon-Santana*, 429 F.3d 1258, 1260 (9th Cir. 2005) (quoting *United States v. Duarte-Higareda*, 113 F. 3d 1000, 1003 (9th Cir. 1997)); *Christensen*, 18 F.3d at 825-26.

[19]     Additionally, we can look to our jurisprudence on waivers of other constitutional rights for guidance.  In *People v. Sangalang*, we held we must look to the totality of the circumstances when determining the validity of a waiver of the defendant's Fifth Amendment *Miranda* rights.  2001 Guam 18 ¶ 13 (quoting *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998)).  In

*Sangalang*, the court looked for any coercive circumstances and the defendant's knowledge of English when assessing the written *Miranda* waiver's validity. *Id.* ¶ 16. In *People v. Mallo*, we held that a valid waiver of one's right to appeal, in a plea agreement, must show "sufficient awareness of the relevant circumstances and likely consequences." 2008 Guam 23 ¶ 15 (quoting *People v. Van Bui*, 2008 Guam 8 ¶ 11). In *People v. Hualde*, we held one need not "know and understand every possible consequence of a waiver of the Fifth Amendment privilege." 1999 Guam 3 ¶ 24 (citing *Colorado v. Spring*, 479 U.S. 564, 574 (1987)). We held that waiver of one's Fifth Amendment privilege was valid if there was no evidence of coercion and the waiver was made with "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Our jurisprudence on waivers of constitutional rights considers the totality of the circumstances surrounding a waiver, including a defendant's language abilities, coercive circumstances, awareness of the relevant and likely circumstances, and knowledge of the right being abandoned.

[20]    Perez was charged with a special allegation of felony on felony release under 9 GCA § 80.37.1. Title 9 GCA § 80.37.1(a) states that "[w]hoever commits a felony punishable under the laws of Guam while on release on a felony charge . . . shall, in addition to the sentence imposed for the crime committed while on release, be imprisoned for a term of not less than five (5) years nor more than twenty-five (25) years." 9 GCA § 80.37.1(a) (2005); *see also Guerrero*, 2017 Guam 4 ¶ 22. A conviction under this special allegation increases a sentence term, and thus Perez has an *Apprendi* right, i.e., a constitutional right to a jury trial, to prove beyond a reasonable doubt he violated 9 GCA § 80.37.1(a). *See Apprendi*, 530 U.S. at 490; *Guerrero*, 2017 Guam 4 ¶ 21.

**[21]**    Perez argues he did not execute a waiver of his *Apprendi* right "knowingly and with express and intelligent consent." Appellant's Br. at 13-14 (Jan. 14, 2020). He reasons that a signature alone is not enough to show a knowing, intelligent, and voluntary waiver. *Id.* at 14-15. Perez asserts that the trial court did not do enough to ensure the waiver was knowing, intelligent, and voluntary when it "blankly accepted" Perez's waiver without further questioning. *Id.* at 17. Perez maintains the court should have informed him about "the difference between judicial fact finding, sentence enhancements, and any alternative to the jury's role" and the potential consequences of an *Apprendi* waiver. *Id.* at 18. Perez argues the court needed to ensure he understood the consequences of a waiver. Appellant's Reply Br. at 1, 6 (June 29, 2020). Perez alleges that, as the waiver was only signed on the last day, after repeatedly declining to waive his right to a jury trial, "the record clearly conveys Perez was reluctant to execute his *Apprendi* waiver and continually maintained his right to jury trial on the enhancement." *Id.* at 2-4; *see also* Appellant's Br. at 19.

**[22]**    The People argue Perez was not pressured into an uninformed, involuntary waiver, as the court addressed the possibility of an *Apprendi* hearing and possibility of a waiver six times throughout the trial. Appellee's Br. at 7-15 (Mar. 16, 2020). The People note that the court explained the number of days and the nature of the *Apprendi* hearing and expressly gave Perez and his counsel time to discuss the matter. The People contend the court did inform Perez of the potential consequences of the *Apprendi* hearing, and the People also point to the written waiver itself, which explains that, by waiving, the defendant is giving up the opportunity for another jury trial on the special allegation. *Id.* at 16-17.

[23]     The day the second jury trial for the felony on felony release allegation was to begin, Perez signed an *Apprendi* waiver.  The court then dismissed the jury and cancelled the rest of the trial.

[24]     The trial court did question defense counsel about Perez's understanding of his *Apprendi* rights and the potential consequences for sentencing.  The court specifically asked the People to explain to Perez the potential effects on sentencing and ensured Perez had the opportunity, several times, to either waive or go forward with the trial.  *See* Tr. at 14-16 (Jury Trial, Feb. 19, 2019).  The court asked defense counsel several times if Perez understood his *Apprendi* rights and the consequences of waiver.  There is no evidence of coercion.  Perez was informed in open court of the potential consequences, i.e., the possible sentencing for the special allegation.  The court made clear its decision to maintain the same jury for the *Apprendi* trial.  While the court did ask several times if Perez intended to waive his right to a jury trial, the court also clearly explained and planned how the jury trial would proceed.  Based on the totality of the circumstances, Perez knew the consequences of his waiver, including the sentencing potential at stake, and was not pressured or coerced into signing the waiver.  There is no evidence that Perez is specially disadvantaged or did not comprehend the language of the waiver to warrant the court taking further steps to ensure Perez signed the waiver knowingly, intelligently, and voluntarily.

[25]     We affirm the finding of the trial court as it did not err in accepting Perez's written *Apprendi* waiver.

## B. Sufficiency of the Evidence Proving Methamphetamine Is an Amphetamine-Based Substance

[26]     Perez argues the trial court erred in denying his motion for acquittal as there was insufficient evidence to sustain his conviction of Possession of a Schedule II Controlled Substance.  He contends that the People failed to provide sufficient evidence that

methamphetamine is an "amphetamine-based substance." Appellant's Br. at 21. The People respond that the book entered into evidence, *Secrets of Methamphetamine Manufacture: Including Recipes for MDA, Ecstasy and Other Psychedelic Amphetamines*, was sufficient to establish methamphetamine is an "amphetamine-based substance." Appellee's Br. at 25. Perez argues the title of the book is not enough, and the People should have introduced evidence on the chemical composition of the drugs and their effects on users. *See* Appellant's Br. at 25.

[27]     Under 8 GCA § 100.10, the trial court "on motion of a defendant or on its own motion shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." 8 GCA § 100.10 (2005). The trial court determines whether it should grant a motion for judgment of acquittal by applying the same test used when assessing the sufficiency of the evidence. *People v. Song*, 2012 Guam 21 ¶ 27. A guilty verdict removes the presumption of innocence to which a defendant was formerly entitled and replaces it with a presumption of guilt. *Id.* ¶ 28 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011); *Herrera v. Collins*, 506 U.S. 390, 399 (1993)). "Thus, on appeal we review the evidence presented at trial in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* ¶ 27. In our analysis, we afford the People "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Id.* ¶ 28 (quoting *Sisk*, 343 S.W.3d at 65).

[28]     When ruling on a motion for judgment of acquittal, the trial court is concerned with the mere existence or nonexistence of evidence, not its weight. *Id.* ¶ 29. "In a sufficiency of the evidence analysis, courts determine whether there is sufficient direct and/or circumstantial evidence from which reasonable inferences can be drawn to support each element of the crime or

crimes charged." *People v. Jesus*, 2009 Guam 2 ¶ 62; *see also People v. Flores*, 2004 Guam 18 ¶ 6; *United States v. Boskic*, 545 F.3d 69, 85 (1st Cir. 2008) ("[E]vidence sufficient to support a guilty verdict may be entirely circumstantial, and the factfinder is free to choose among reasonable interpretations of the evidence." (quoting *United States v. Vazquez-Botet*, 532 F.3d 37, 60 (1st Cir. 2008)). This standard seeks to ensure the factfinder can fulfill their responsibility, which is "to draw reasonable inferences from basic facts to ultimate facts." *People v. Flores*, 2009 Guam 22 ¶ 70 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Jurors may make reasonable inferences, apply common sense, and consider matters of common knowledge. *See id.*; *State v. Glenn*, 906 A.2d 705, 716–17 (Conn. App. Ct. 2006).

[29] With these standards in mind, we turn to Perez's claim there was insufficient evidence to sustain a conviction of felony drug possession because the People could not prove the element of "an amphetamine-based substance." RA, tab 51 (Jury Instr. 7A, Feb. 19, 2019).

[30] Our court has held "lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identi[ty] of the substance involved in an alleged narcotics transaction." *People v. Mateo*, 2017 Guam 22 ¶ 38 (alteration in original) (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976)); *see also People v. Song*, 2021 Guam 14 ¶¶ 22-26. The Sixth Circuit, in *United States v. Schrock*, held:

> To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule. In view of the limitations that such a burden would place on prosecutors, and in accordance with general evidentiary principles, courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence. So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable.

855 F.2d 327, 334 (6th Cir. 1988) (internal citations omitted).

**[31]** While one need not present expert scientific analysis to establish the identity of a drug, one cannot simply assume the name "methamphetamine" will sufficiently inform a jury that methamphetamine is an amphetamine. The Supreme Court of California, in *People v. Davis*, 303 P.3d 1179 (Cal. 2013), held that a factfinder could not reasonably conclude from the name "3,4-methylenedioxymethamphetamine" that the drug contained amphetamine or methamphetamine. 303 P.3d at 1183. The court held that such a logical leap by the factfinders would be based on "suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work." *Id.* (citations omitted). The prosecution must present more than a mere name of a substance to prove the nature of a substance.

**[32]** The trial court found there was sufficient evidence of possession of an amphetamine-based substance, as the officers had confiscated small baggies of a substance that yielded presumptive positives for methamphetamine, and the officers visually identified the substance as methamphetamine. At trial, the People presented no direct evidence explaining the relationship between amphetamine and methamphetamine. The only evidence presented regarding the relationship was a book entitled *Secrets of Methamphetamine Manufacture: Including Recipes for MDA, Ecstasy, and Other Psychedelic Amphetamines*. During the trial, the jurors did not have an opportunity to extensively look through the book. The court instructed the prosecution to "[p]ass it around so they can take a look at it, get a hold of it, hold on to it for a few seconds, then pass it on to the next person." Tr. at 17 (Jury Trial, Feb. 2, 2019). As the jurors did not extensively interact with the book, it is unlikely they learned any facts from the book aside from what may be surmised by the book's title. The jurors would have had to rely on "suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work" to conclude methamphetamine is an amphetamine-based substance. *See Davis*, 303 P.3d at 1183.

**[33]**    Even so, a court may exercise its ability to take judicial notice of a fact to fill the evidentiary gap.  A court may *sua sponte* take judicial notice when there is not an issue of fact, and the trial court has not denied a request to take judicial notice of a fact.  *See People v. Corpuz*, 2019 Guam 1 ¶ 4 n.2 (taking judicial notice of documents that were not submitted as part of record on appeal).  "Rule 201 of the Guam Rules of Evidence governs the admission of evidence through judicial notice of adjudicative facts."  *Diaz*, 2007 Guam 3 ¶ 60; Guam R. Evid. 201.  Guam Rule of Evidence ("GRE") 201 is based on Federal Rule of Evidence ("FRE") 201.  Guam R. Evid. 201, Source.  Under FRE 201(d) and GRE 201(d), "The court may take judicial notice at any stage of the proceeding."  Federal courts read this to include taking judicial notice at the appellate stage of proceedings if it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.  *See In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205-06 (3d Cir. 1995); *see also* 60 Am. Jur. *Proof of Facts* 3d 175 § 7 (2001).  Rule 201 authorizes a court to take judicial notice of an adjudicative fact if that fact is "not subject to reasonable dispute."  Fed. R. Evid. 201(b) advisory committee's note to 1972 proposed rules; GRE 201(b).  The California Evidence Code limits judicial notice on appellate review "where the [trial court] judge refuses to take notice" unless "the information presented was so persuasive 'that no reasonable judge would have refused to take judicial notice of the matter.'"  Kenneth W. Graham, Jr., 21B *Fed. Prac. & Proc. Evid.* § 5110 n.52 (2d ed.) (quoting Cal. Evid. Code § 453, cmt.).

**[34]**    Many appellate courts have relied on judicial notice to fill the evidentiary gap between the substance named in the charging statute and the substance proved possessed at trial.  The Tenth Circuit *sua sponte* took judicial notice that heroin, as a derivative of opium, is a narcotic, and thus within the definition of narcotic used in the charging statute.  *Jordan v. United States*, 345 F.2d 302, 304 (10th Cir. 1965).  The D.C. Circuit *sua sponte* acknowledged cocaine, as a

derivative of coca leaves, is a "narcotic drug" per the definition of the charging statute. *United States v. Mills*, 463 F.2d 291, 296 n.27 (D.C. Cir. 1972). The Fourth Circuit judicially noticed "PCP" is phencyclidine, despite the government presenting no evidence on the matter. *Dolan*, 544 F.2d at 1223 n.8. In *United States v. Van Buren*, the defendant was charged for distribution of cocaine, but there was proof only of distribution of cocaine hydrochloride. 513 F.2d 1327, 1328 (10th Cir. 1975). The Tenth Circuit held this variation was not fatal, as both substances are illegal under the statute. *Id.*

[35]  In the case before us, there was sufficient evidence to prove possession of methamphetamine, but the People left an evidentiary gap between the substance proved at trial, methamphetamine, and the substance named in the indictment, an "amphetamine-based substance."

[36]  It is appropriate for us to exercise our discretion to take judicial notice of the indisputable fact that methamphetamine is an amphetamine-based substance. *United States v. Blake*, 116 F.3d 1202, 1203-04 (7th Cir. 1997) ("Methamphetamine is an amine derivative of amphetamine, $C_{10}H_{15}N$, in the form of its crystalline hydrochloride."); *Hackett v. Artesia Police Dep't*, Civ. No. 08-306 MCA/RHS, 2009 WL 10681494, at *15 (D.N.M. Sept. 23, 2009), *aff'd*, 379 F. App'x 789 (10th Cir. 2010) ("[M]ethamphetamine . . . indisputedly is the amphetamine-based substance smoked in glass pipes of the nature found in Hackett's pocket."); *see also* Department of Justice/Drug Enforcement Administration *Drug Fact Sheet: Amphetamines* (Apr. 2020), https://www.dea.gov/sites/default/files/2020-06/Amphetamines-2020_0.pdf (last visited Dec. 2, 2021). That methamphetamine is an amphetamine-based substance is not a fact subject to reasonable dispute, and no indication was made that any party, including the court, would contest its validity. Thus, we take judicial notice of this fact.

**[37]**   With judicial notice of this indisputable fact, there is sufficient evidence that the methamphetamine Perez possessed was an amphetamine-based substance.

### C. Enhancing Perez's Sentence by Five Years for 'Commission of a Felony While on Felony Release' When the Underlying Felony Charge Was Dismissed Was Not in Error

**[38]**   Perez argues the trial court erroneously enhanced his sentence for the Commission of a Felony While on Felony Release because Perez was acquitted of the original felony. Appellant's Br. at 26-27. The People argue the sentence was legal and proper because the sentencing enhancement applies regardless of the outcome of the underlying charge. Appellee's Br. at 29. The People also point to the unambiguous wording of the statute, noting the legislature "could have easily restricted felony on felony sentencing enhancements to only cases where the underlying felony results in a conviction," but chose not to. *Id.* at 30-31. The People note the wording is almost identical to the federal statute, which the Second Circuit held applies even when the criminal defendant is acquitted of the underlying offense. *Id.* at 28-30 (citing *United States v. Davis*, 114 F.3d 400 (2d Cir. 1997) (per curiam)).

**[39]**   In *United States v. Davis*, the defendant made a similar argument about 18 U.S.C.A. § 3147.[2] *See* 114 F.3d 400. The Second Circuit found the argument unpersuasive and ultimately upheld the sentence, stating:

> The statute is concerned solely with whether a person released on bail in connection with a federal criminal charge takes action in violation of federal law while on pretrial release. By its terms, the statute regulates the conduct of

---

[2] Section 3147 provides:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to--
>
> (1) a term of imprisonment of not more than ten years if the offense is a felony; or
>
> (2) a term of imprisonment of not more than one year if the offense is a misdemeanor.
>
> A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

18 U.S.C.A. § 3147 (Westlaw through Pub. L. 117-57).

individuals deemed fit for pretrial release during their time under judicial supervision. In this instance, the defendant was indicted for conduct committed while under such supervision; accordingly, whether he ultimately was acquitted of the charge giving rise to the initial provision of bail is irrelevant.

*Davis*, 114 F.3d at 403.

[40]     In *Speight v. United States*, the court analyzed a similar enhancement statute. *See* 569 A.2d 124, 126 (D.C. 1989) (en banc). The court held the conduct at issue is not the guilt of the first offense, but "[i]t is the fact of pretrial release that triggers the enhancement provision." *Id.* The court stated that the punishment is not for committing the original crime or the release status *per se*, but for committing the second offense. *Id.* This second offense "demonstrates disdain for the law by committing an offense while on release pending trial of an earlier charge." *Id.* at 128 (quoting *State v. Webb*, 308 S.E.2d 252, 258 (N.C. 1983)). This second offense abuses the trust the court placed in the defendant by allowing the original release, and since this is punishing the "betrayal of trust placed in the defendant by the court, there is no requirement that there be a showing of substantial probability that the defendant committed the offense for which he was originally released or that the offense must be a felony." *Id.* at 127 (citation omitted); *see also State v. Henderson*, No. CR9385061, 2008 WL 808964, at *2 (Conn. Super. Ct. Mar. 11, 2008) (holding similar statute applied regardless of defendant's "guilt or innocence as to those earlier pending charges").

[41]     Our statute condemns "[w]hoever commits a felony punishable under the laws of Guam *while on release on a felony charge*." 9 GCA § 80.37.1(a) (emphasis added). It does not mention an exception based on the outcome of the underlying charge.

[42]     Perez was found guilty and sentenced to an additional five-year term for committing a felony while on a *felony release*, not for committing a felony while on release for another felony for which he was convicted. It is the fact of committing the second offense while on release that

causes the sentencing enhancement. As other jurisdictions have held, the sentence enhancement is a punishment for abusing the trust of the court. When one commits a felony while on release for another felony charge, it demonstrates a disregard for the law and a betrayal of the trust of the court. The sentencing enhancement serves as a deterrent to the person on release.

[43]     The trial court did not err in enhancing Perez's sentence by five years for "Commission of a Felony While on Felony Release" when the underlying felony charge was dismissed. We affirm the sentencing decision of the trial court.

## V. CONCLUSION

[44]     We find no error in the trial court's decision to accept the waiver of a jury trial on the special allegation, to accept an *Apprendi* waiver, or to enhance Perez's sentence. The People presented sufficient evidence to prove possession of methamphetamine, but they left an evidentiary gap to show that methamphetamine is an "amphetamine-based substance" as charged in the indictment. We take judicial notice of the fact that methamphetamine is an amphetamine-based substance, and we conclude the evidence was sufficient to prove Possession of a Schedule II Controlled Substance (as a Third Degree Felony). Accordingly, we **AFFIRM** the Judgment of Conviction.



/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
F. PHILIP CARBULLIDO
Chief Justice